FRED W. M. HEERWAGEN, as Comptroller of the City of Buffalo, Appellant, *v.* CROSSTOWN STREET RAILWAY COMPANY OF BUFFALO et al., Respondents.

1. TAX — STREET SURFACE RAILROADS — DEDUCTION OF SUMS BASED UPON PERCENTAGE OF GROSS EARNINGS FROM SPECIAL FRANCHISE TAX — TAX LAW, § 46. A payment by a street surface railway company to a municipality under an agreement therewith, whereby a percentage of its gross receipts previously payable had been reduced in consideration of the granting of transfers to passengers, is, under section 46 of the Tax Law (L. 1896, ch. 908), "in the nature of a tax," and the amount thereof should be deducted from its special franchise tax as assessed by the state board of tax commissioners.

2. APPEAL — WHEN JUDGMENT SHOULD BE MODIFIED. The modification of a judgment and not the granting of a new trial is required when the Appellate Division reduces the amount and it is not possible upon such trial that the facts can be altered.

*Heerwagen* v. *Crosstown St. Ry. Co.*, 90 App. Div. 275, modified.

(Argued May 16, 1904; decided August 5, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 5, 1904, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles L. Feldman, Corporation Counsel (Percy S. Lansdowne* of counsel), for appellant. The construction given by the trial court to section 46 of the Tax Law is correct. (*People ex rel.* v. *Tax Comrs.*, 174 N. Y. 438 ; *Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 455 ; *Benton* v. *Wickwire*, 54 N. Y. 226 ; *Matter of Miller*, 110 N. Y. 216; *Smith* v. *People*, 47 N. Y. 330 ; *R. Hospital* v. *Mayor, etc.*, 84 N. Y. 108.) The payment made by the defendant railway company was not in the nature of a tax, but purchase money for property acquired by the railroad company from the city, and, therefore, should not be deducted from the special franchise tax levied against the defendant's special franchises for the year 1900–1901. (*Dalrymple* v. *City of Milwaukee*, 53 Wis. 178 ; *Davidson* v. *Comrs.*, 18 Minn. 486 ; *P. Assn.* v. *Wood*, 39 Penn. St. 73 ; *Helbish* v. *Calherman*, 64 Penn. St. 154 ; *Hanson* v. *Vernan*, 27 Iowa, 28 ; *Perry* v. *Washburn*, 20 Cal. 318 ; *Matter of Mayor, etc.*, 11 Johns. 77 ; *Mitchell* v. *Williams*, 27 Ind. 62 ; *L. Assn.* v. *People*, 20 Wall. 664.)

*Porter Norton* and *Charles J. Bissell* for respondents. The legislature having, in express terms, directed that any sum based upon percentages of gross earnings which has been paid by a corporation under an agreement therefor to a city, town or village for its exclusive use, within the next preceding year, on account of its special franchise, must be deducted from the tax levied upon such franchises, the court will not give such a construction to the act containing these directions as will defeat the legislative intent; the payments made by defendant to the city of Buffalo, under an agreement therefor, were in the nature of a tax. (*U. S.* v. *Wigglesworth*, 2 Story, 369 ; *Stebbins* v. *Kay*, 123 N. Y. 31 ; *Martin* v. *Hunter*, 1 Wheat. 326 ; *Adams* v. *Bancroft*, 3 Sumn. 387 ; *Montclair* v. *Ramsdell*, 107 U. S. 147 ; *Mayor* v. *B., etc., R. R. Co.*,

97 N. Y. 275; *Mayor* v. *E. A. R. R. Co.*, 118 N. Y. 389; *State Freight Tax Cases*, 15 Wall. 232; *People* v. *D. K. E. Society*, 74 App. Div. 557; *Philadelphia* v. *Wood*, 39 Penn. St. 73; *Davidson* v. *County Comrs.*, 18 Minn. 486.)

*Charles F. Brown* for the New York City Railway Company, intervening as respondent. The percentage payments made by the defendant in this case and all similar payments are " in the nature of a tax." (*Mayor, etc.,* v. *S. A. R. R. Co.*, 32 N. Y. 261; *Mayor, etc.,* v. *D. D., etc., R. R. Co.*, 112 N. Y. 137; *Mayor, etc.,* v. *T. A. R. R. Co.*, 117 N. Y. 404; *Mayor, etc.,* v. *T. T. S. R. Co.*, 113 N. Y. 311; *Gordon* v. *Appeal Tax Court*, 3 How. [U. S.] 133; *The Delaware R. R. Tax Case*, 18 Wall. 206; *People* v. *Jarvis*, 19 App. Div. 466; *Royall* v. *Virginia*, 116 U. S. 572.) The construction of section 46, here contended for, accomplished the equality in taxation which the legislature had in view. (*People ex rel.* v. *Tax Comrs.*, 174 N. Y. 417.)

CULLEN, J. This action was brought to recover the amount of the city tax imposed upon the respondent, a street surface railroad company, for its special franchise as assessed by the state board of tax commissioners. The defendant claimed to deduct from the tax so imposed the amount paid by it to the city during the previous year under an agreement with the municipality known as the " Milburn agreement," and the principal question presented by this appeal is the right to such deduction. The trial court rendered judgment for the full amount claimed. The Appellate Division, by a divided court, reversed this judgment and granted a new trial, holding that there should have been deducted from the plaintiff's claim the amount paid by the defendant under the agreement above mentioned. The facts of the case are as follows :

In February, 1890, the defendant acquired the right to construct and operate a surface railroad on certain streets in the city of Buffalo, it being the highest bidder therefor at a public sale of the privilege made by the comptroller. By the terms

of this purchase the defendant was required to pay certain percentages of its gross earnings in addition to those prescribed by section 8, chapter 252 of the Laws of 1884. In and prior to 1892 there were two other street railway companies in the city also obliged to pay certain percentages of their gross receipts. Each of these roads was operated separately and passengers transferring from one to the other were obliged to pay an additional fare. Negotiations were had between the city and the railroad companies with reference to securing to passengers free transfers from the route of one company over that of the others, and in January, 1892, an agreement was made by the parties whereby the railroad companies agreed to give such transfers without charge, and in consideration thereof the city reduced the percentage of gross earnings which it was entitled to receive from the companies to certain specified rates. This agreement was ratified by an act of the legislature known as chapter 151 of the Laws of 1892. The plaintiff's suit is for the annual tax imposed on the defendant's special franchise for the year 1900–1901, amounting to $44,740.05. During the year preceding the levy of such tax the defendant paid to the city under the requirements of the "Milburn agreement" percentages of its gross earnings amounting to $13,480.45, which sum it claims it is entitled, under the provisions of section 46 of the Tax Law to deduct from the plaintiff's claim. That section reads as follows: "Deduction from Special Franchise Tax for Local Purposes. If when the tax assessed on any special franchise is due and payable under the provisions of law applicable to the city, town or village in which the tangible property is located, it shall appear that the person, copartnership, association or corporation affected has paid to such city, town or village for its exclusive use within the next preceding year, under any agreement therefor, or under any statute requiring the same, any sum based upon a percentage of gross earnings, or any other income, or any license fee, or any sum of money on account of such special franchise, granted to or possessed by such person, copartnership, associ-

ation, or corporation, which payment was in the nature of a
tax, all amounts so paid for the exclusive use of such city,
town or village except money paid or expended for paving or
repairing of pavement of any street, highway or public place,
shall be deducted from any tax based on the assessment made
by the state board of tax commissioners for city, town or vil-
lage purposes, but not otherwise ; and the remainder shall be
the tax on such special franchise payable for city, town or
village purposes."

That the sum here in dispute was based upon a percentage
of gross earnings and was paid to the municipality for its
exclusive use under an agreement therefor is unquestionable,
and the whole controversy turns on this narrow point, the
effect of the provision " which payment was in the nature of
a tax." The contention of the plaintiff and appellant is that
the qualification or limitation applies as well to percentages
of gross earnings paid to a city or town under any agreement
or statute as to the other payments mentioned in the section ;
that the payment made by the defendant was not in the nature
of a tax and that, therefore, the defendant was entitled to no
credit therefor on its special franchise tax. It may be admit-
ted that neither the payment obligated to be made by the
defendant upon the original purchase of the franchise nor
that substituted for it by the " Milburn agreement " is in the
strict and accurate sense of the term a tax. A tax has been
defined as a forced contribution from a citizen to the state to
be applied for governmental purposes. (Davies System of
Taxation, p. 1.) The payments the defendant agreed to make
were the consideration of the acquisition of valuable property
rights which would survive its corporate existence and possess
all the ordinary attributes of property. (*People* v. *O'Brien*,
111 N. Y. 1.) This is equally true whether the amount
of the payments was prescribed by statute or fixed by com-
petition at a public sale. The first case is in effect simply
that of a private sale where the purchaser accepts the terms
fixed by the vendor. The stipulated payments are really
in the nature of rent or a rent charge. But granting all

this it seems to us manifest from the plain terms of the statute that these are the very payments which the legislature intended should be deducted from the amount of the special franchise tax. In the first place both in statutes and in judicial decisions the term " tax " is frequently used in a much more comprehensive sense than that which we have stated to be its accurate meaning. It is not used so broadly as to include the revenue from private property which the state or one of its political divisions may hold for emolument the same as other owners; but it certainly is used to comprehend exactions for the privilege of exercising franchise rights which latter are often, especially in the case of foreign corporations, merely the consideration received for privileges which the state is at liberty to grant or to withhold at pleasure. Instances of this kind occur in the Tax Law, and it may be that in the section before us the legislature used the term " In the nature of a tax " in this broad, comprehensive sense. But the controlling consideration with us is the fact that unless payments such as that made by the defendant fall within the provisions of the statute then there is none to which it can apply. We may assume that unless our Constitution prohibits it the state may contract with a corporation or taxpayer as to the amount of taxes it should pay, whether proportioned to its gross earnings or on any other basis and such a contract would be protected by the Constitution of the United States. (*Home for the Friendless* v. *Rouse*, 8 Wall. [U. S.] 430.) But the legislature of this state has not seen fit to enter into contracts of that character (except possibly at some very remote period in the charters of corporations which do not now occur to us) and certainly it has never authorized municipalities to enter into any agreement as to taxation with corporations using the public streets and subject to the special franchise tax. Moreover, if a valid agreement as to taxation should actually exist it would seem doubtful at least whether the taxation could be increased. We have asked in vain the counsel to suggest a case which either in fact does or theoretically might fall within the exception, assuming that the excep-

tion is to be confined to what is strictly a tax. The learned judge who wrote the dissenting opinion in the Appellate Division thought that the lamp tax imposed under section 414 of the charter of the city of Buffalo (Chap. 105, Laws of 1891) was a proper deduction under the provision discussed. We see no force in the suggestion unless there is some other legis_ lation on the subject to which our attention has not been called. Under the charter the tax is assessed on the property in the district proportionately to its value; it is neither subject to agreement nor based on gross receipts.

The general rule for the construction of statutes is well settled. "The intention is to be deduced from a view of the whole statute, and that intention when ascertained will always prevail over the literal sense of the terms. Statutes should be read according to the natural and most obvious import of the language, without resorting to artificial or *forced* constructions, for the purpose of either limiting or extending their operation. If practicable, effect must be given to all the language employed, and inconsistent expressions are to be harmonized to reach the real intent of the Legislature." (*Matter of N. Y. & Brooklyn Bridge*, 72 N. Y. 527.) The very first deductions granted by the statute are sums paid under agreement or statute based upon a percentage of gross earnings or other income. If it be admitted that the provision, "which payment was in the nature of a tax," qualifies the percentages of gross receipts and is not confined to "or any sum of money on account of such special franchise granted to or possessed by such person, copartnership, association or corporation," a proposition subject to no small degree of doubt, that provision cannot be construed so as to render nugatory and inoperative the previous direction of the statute.

Various objections are made to what it is claimed will be the practical working of this construction of the Tax Law. We may frankly admit that these objections are not without force, though we think they have been magnified. It is said that if the payment for gross receipts on a purchase of a franchise is to be deducted from the franchise tax, any

percentage may be safely bid in the expectation that the annual payment will be deducted from the tax. This is true only within limits, for the percentage may exceed the amount of the tax. It is also objected that under this construction of the franchise law a municipality may have its revenue from the railroad company diminished instead of increased. We do not see how this can be. In both the cases suggested the annual payments of percentage of gross earnings must be made at all events. The only credit that the company can obtain for such a payment is by deduction from the special franchise tax. On the other hand, it seems reasonable that the holder of a franchise burdened by an annual rent or charge should not be taxed as highly as the holder of a similar franchise unincumbered. The statute in question was enacted at a special session of the legislature convened by the governor for that purpose. In his message to the legislature he recommended that " it should be provided that from the sum assessed by the State authorities as the tax which a corporation must pay because of its local franchise, there shall be deducted the amount already annually paid by it to the locality for such franchise. In no other way is it possible to tax these corporations with uniformity and equity." It may be that this view is erroneous, and that the more accurate and equitable way would be to determine the value of the franchise not as free and clear but as burdened by the charges to which it might be subject. Nevertheless it is plain that this view was accepted by the legislature, for under the scheme provided by the present statute the franchise is to be assessed as real estate ; that is to say, not subject to diminution for charges thereon, and the allowance for such charges is made only by deducting them from the tax.

While we are thus of opinion that the learned Appellate Division was right in its disposition of the merits of the controversy, we think it should not have granted a new trial but should have modified the judgment, since it was not possible that on a new trial the facts determining the liability of the defendant could have been altered. (*Freel* v. *County of*

*Queens*, 154 N. Y. 661.) The answer of the defendant admits its willingness to pay the amount claimed by the defendant less the sum paid in the previous year under the "Milburn agreement."

We, therefore, should direct that the order of the Appellate Division be modified so as to reduce the judgment awarded by the trial court by deducting therefrom the sum of $13,480.45, together with the interest and additions thereon provided by the charter of the city of Buffalo from the 10th day of July, 1900, and as thus modified affirmed, without costs to either party in the Appellate Division or in this court.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and WERNER, JJ., concur.

Ordered accordingly.