the exchange itself through its appropriate committees. The same rule applies to plaintiffs' demand that the court shall practically take charge of the trial by directing how it must be conducted. Here again we are not called upon to interfere to prevent an injury which is purely anticipatory. A person charged as these plaintiffs are has certain rights which are well settled and generally recognized, and may claim others which are not so clearly determined. It is the duty of the exchange, in the first instance, to pass upon his claims. If he is given all to which he is entitled, he will have no grievance. If he be denied rights which should have been accorded to him, and injury follows, it will then be open to him to seek redress in the courts.

It follows that the order appealed from must be affirmed, with $10 costs and disbursements. All concur.

---

PEOPLE ex rel. NEW YORK, W. & B. RY. CO. v. HYDE et al.  ·

(Supreme Court, Appellate Division, First Department. March 10, 1911.)

TAXATION (§ 376*)—SPECIAL FRANCHISES—VALUATION—AMOUNT OF TAXES—DEDUCTIONS.

    A city ordinance and amendments, which grant to a railway company the right to cross enumerated streets, for which it agrees to pay $8,000 annually for the first 10 years and $16,000 annually for the succeeding 15 years, and additional compensation after commencing to operate its road, grant to the company a special franchise, and where the State Board of Tax Commissioners assessed the special franchise as an entirety and fixed its value for specified years, and on such valuation the city imposed taxes, the amount paid by the company to the city under the ordinance and amendments must be credited to it as required by Tax Law (Consol. Laws, c. 60) § 48.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 625; Dec. Dig. § 376.*]

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of the New York, Westchester & Boston Railway Company, against Charles H. Hyde, Chamberlain of the City of New York, and David E. Austen, Receiver of Taxes of the City of New York. From an order denying a motion for a peremptory writ, relator appeals. Reversed and remanded.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

George S. Graham, for appellant.
Curtis A. Peters, for respondents.

McLAUGHLIN, J. The relator is a railroad corporation organized under the laws of the state of New York. By virtue of an ordinance theretofore passed by the board of aldermen of the city of New York, the relator obtained from the city the right and privilege to construct and operate a four-track railway in, upon, and across certain streets, avenues, parkways, highways, and public places of the borough of the Bronx in such city, subject to certain conditions, one of which was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

that the relator, its successors or assigns, should pay to the city "during the first ten years, commencing upon the day when this ordinance shall be approved by the mayor, an annual sum of eight thousand dollars, and during the succeeding fifteen years an annual sum of sixteen thousand dollars. From the date of the commencement of the operation of any portion of the railway until the end of the first ten years of this grant, an additional sum of forty (40) cents per linear foot per annum for each line of single-track railway within the lines of all streets in use, legally opened streets, or streets for which proceedings to open have been initiated, and for the succeeding fifteen years an additional sum of eighty (80) cents per linear foot per annum, in lieu of said sum of forty (40) cents. * * * All such payments shall be made to the comptroller of the city in equal payments at the end of each quarter year on the 1st day of January, April, July and October in each year." Thereafter, by agreements between the relator and the city, certain amendments were made to the ordinance in part changing and redesignating the streets, avenues, parkways, highways, and public places as originally designated, but not affecting the compensation to be paid. The quarterly payments of $2,000, provided for in the ordinance, have been made to the comptroller; but no payments have been made under the clause providing for a payment of 40 cents per linear foot per annum, inasmuch as no operation has been commenced on any portion of such road.

In the years 1908 and 1909 the relator had constructed certain bridges and structures over and across a few of the streets, but had not commenced the construction across the greater part of them. Many of the streets and avenues named in the ordinance and amendments thereto have not been opened by the city, nor have proceedings to open the same been taken, and, according to the record, at the present time, and for many years to come, it will be impossible to ascertain or determine the exact number of streets, avenues, and public places which will intersect with the located route of the relator's railroad and under or over which such road will cross.

The State Board of Tax Commissioners of the State of New York, in the years 1908 and 1909, fixed and determined the value of the special franchise of the relator in the city of New York, and included therein the bridges, viaducts, and other structures which had, at that time, been erected by the relator, and such board in each year filed a statement of the valuation of the relator's special franchise in the city of New York with the department of taxes and assessments. Thereafter, the city of New York assessed the relator on account of its special franchise in such city for each of the years mentioned, according to the valuation certified to it by the State Board of Tax Commissioners; and upon which a tax was thereafter levied by the city of $5,889.74 for the year 1908 and the sum of $6,123.16 for 1909. In each of those years the relator demanded that the chamberlain of the city certify to the receiver of taxes the payments made by it under said ordinance and that the receiver of taxes credit on the tax roll to the relator the amount stated in such certificate to the amount of the special franchise tax. The demand in each instance was refused. The relator thereupon made a motion for a peremptory writ of mandamus

to compel the chamberlain to make such certificate, and the receiver of taxes to give such credit. The motion was denied, and the appeal is from the order.

I am of the opinion the motion should have been granted. Section 48 of the revised tax law, in so far as the same is material to the question under consideration, provides that:

"If, when the tax assessed on any special franchise is due and payable under the provisions of law applicable to the city, * * * in which the tangible property is located, it shall appear that the * * * corporation affected has paid to such city * * * for its exclusive use within the next preceding year, under any agreement therefor, * * * any sum of money on account of such special franchise, granted to or possessed by such * * * corporation, which payment was in the nature of a tax, all amounts so paid for the exclusive use of such city * * * shall be deducted from any tax based on the assessment made by the state board of tax commissioners for city * * * purposes; * * * and the remainder shall be the tax on such special franchise payable for city * * * purposes. The chamberlain of a city * * * shall, not less than five nor more than twenty days before a tax on a special franchise is payable, make and deliver to the * * * receiver of taxes * * * his certificate showing the several amounts which have been paid during the year ending on the day of the date of the certificate. On the receipt of such certificate the * * * receiver * * * shall immediately credit on the tax roll to the * * * corporation affected the amount stated in such certificate, on any tax levied against such * * * corporation on an assessment of a special franchise for city * * * purposes only, but no credit shall be given on account of such payment or certificate in any other year, nor for a greater sum than the amount of the special franchise tax for city * * * purposes, for the current year; and he shall collect and receive the balance, if any, of such tax as required by law."

The payments made by the relator to the city of New York under the ordinance are such payments as it is entitled to have credited against the tax levied upon its special franchise. People ex rel. Nassau Electric R. R. Co. v. Grout, 119 App. Div. 130, 103 N. Y. Supp. 975, affirmed 189 N. Y. 510, 81 N. E. 1173; Heerwagen v. Crosstown St. Ry. Co., 90 App. Div. 275, 86 N. Y. Supp. 218, affirmed 179 N. Y. 99, 71 N. E. 729. This I do not understand the city disputes. What it does claim is that the amount paid by the relator should be apportioned among all the crossings of streets described in the ordinance and amendments thereto; in other words, that each crossing constitutes a special franchise, and that a certain amount should be fixed as the rental for each crossing, irrespective of whether the same is used or not, and that, as the State Board of Tax Commissioners has valued but 13 of such crossings out of 100 or more enumerated in the ordinance, the relator was not entitled to have the full amount paid certified; that its remedy is to apply to the receiver of taxes to apportion the $8,000 yearly payment among all the crossings named in the ordinance and to credit against the 13 only the respective amounts apportioned to them.

The statute, as I read it, does not contemplate any such apportionment, nor do I think the receiver of taxes has any authority to make it. People ex rel. New York Central & Hudson R. R. R. Co. v. Gourley, 198 N. Y. 486, 92 N. E. 398. The city granted the right or privilege to the relator to cross all of the streets referred to in the

ordinance and the amendments thereto, for which it agreed to pay $8,000 for the first 10 years, $16,000 for the succeeding 15 years, and certain additional compensation after it commenced to operate the road. It was for this right or privilege that it paid $8,000 during the year 1908 and a similar amount during the year 1909. The relator possesses by one grant, from one authority, one right or privilege, which is to operate the railroad referred to in the public streets of the city. This constitutes its special franchise so far as the city is concerned, and for the purposes of taxation the value of such right or privilege must be determined as a whole.

The learned justice sitting at Special Term, as appears from his memorandum, denied the motion on the authority of People ex rel. New York Central & Hudson River R. R. Co. v. Gourley, supra. I do not think this authority justified the denial of the motion. On the contrary, it seems to me it is an authority in favor of the relator's position. In that case the West Shore Railroad Company ran through the town of Haverstraw and the villages of Haverstraw and West Haverstraw. The State Board of Tax Commissioners assessed the relator on its special franchise in the town of Haverstraw, which included seven crossings (five in the village of Haverstraw and two in the village of West Haverstraw). The assessment fixed the valuation of the special franchise in the town at $25,400. The assessors of the village of Haverstraw determined that their proportion was $16,800 and fixed the assessment at that amount, and the assessors of the village of West Haverstraw determined that their proportion of the total assessment was $7,250 and fixed the assessment at that amount. It was held that the village assessors had no power, under the statute, to determine the valuation or to make such assessment; that it was the duty of the State Board of Tax Commissioners to certify to the town clerk separately the value, in gross, of the special franchise within each village of the town as determined by them, in order to enable the assessing officers of such villages to perform the clerical duty of entering upon the assessment rolls the amounts belonging thereto. While it is true that the court did hold that each separate crossing or highway occupation constituted a separate special franchise, it was, as it seems to me,—with reference to the particular question there presented, which was that all of the crossings in each village constituted a special franchise, the value of which had to be separately ascertained; otherwise it would be impossible for the village assessors to impose a tax for local purposes. Judge Gray, who delivered the opinion of the court, said:

"I think that the provisions of the statute imposed the duty upon the State Board of Tax Commissioners in such a case to state in their notice, separately, the valuation in gross of the special franchise of the relator within each village of the town as determined by them, in order that the assessing officers of these separate taxing districts might be able to perform the clerical duty of entering upon their assessment rolls the amount belonging thereto. Had that been done, of course, no question could have arisen with respect to the apportionment of the town assessment upon the relator's special franchise; but it was not done, and the consequence was that the local assessors were left to perform a duty of fixing the valuation of the relator's special franchise in the village of Haverstraw, which should have been performed by the state board. This was a function judicial in its na-

ture, which the assessors were not legally capable of performing, inasmuch as it was not provided in nor intended by the law that they should act otherwise than ministerially and clerically when dealing with the assessment of special franchises in their village."

The State Board of Tax Commissioners assessed the special franchise of the relator as an entirety and fixed the value as it now exists at $364,000, in each of the years 1908 and 1909. It was upon this valuation that the city of New York imposed the taxes, and it seems to me that under the statute the relator was entitled to have the $8,000 per year which it paid under its agreement with the city, or so much thereof as equalled the amount of tax imposed, credited to it by the receiver of taxes. Besides, to make an apportionment among the different streets, as suggested by the city, would be doing precisely what the Court of Appeals condemned in the Gourley Case.

It follows that the order appealed from is reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur.