In the Matter of the Application of the NEW YORK AND QUEENS ELECTRIC LIGHT AND POWER COMPANY, Appellant, for a Peremptory Writ of Mandamus against JOHN H. DELANEY, Commissioner of Plant and Structures of the City of New York, et al., Respondents.

**Tax Law — special franchise tax — deductions — when payments exacted by municipality from public service corporation for privilege of crossing a bridge may be deducted from special franchise tax — estoppel — when municipality estopped from objecting to such deductions.**

1. The relator is engaged in the generation and distribution of electricity in the borough of Queens, city of New York. The Queensboro bridge was constructed at the expense of the city of New York across the East river between the boroughs of Manhattan and Queens. At various dates three several agreements were made by and between the proper city official and the relator, each one providing for the installation on the bridge within the borough of Queens by relator of a conduit in which might be laid one or more of its cables. The agreement provided that the relator might lay and install such conduit under

certain conditions and restrictions and in consideration of its agreement to " pay to the City of New York as a rental, the sum of $500 per annum," and that on sixty days' notice in writing it would remove the cable, conduits and fastenings.  For the year 1918 the relator by the proper authorities was assessed upon the special franchises enjoyed and operated by it in the borough of Queens.  This assessment included the right to have and operate the conduits upon the Queensboro bridge above mentioned.  During the year preceding the date when this tax became due, under the agreements above mentioned the relator paid to the city of New York the sum of $1,500 for the privilege secured by it of having and operating its conduits upon said bridge, and by this proceeding it has sought the right to have. such payment credited upon the tax above mentioned.  *Held, first,* that the city is precluded from taking the position that the relator already had the right to cross the bridge with its conduits and that, therefore, no rights were conferred or consideration given for the payments which it was exacting; *second,* the permission to relator to have and operate its cable upon the bridge constituted a right which in connection with its physical property could be assessed as a special franchise (subdivision 6, section 2, article 1 of the Tax Law [Cons. Laws, ch. 60]); *third,* that the payments made by relator to the city for permission to lay and operate its conduits and wires were in the nature of a tax and of a character which the statute permits to be deducted from its special franchise tax.  (Tax Law, § 48.)  (*People ex rel. Nassau Electric R. R. Co.* v. *Grout,* 119 App. Div. 130; affd., on opinion below, 189 N. Y. 510; *Heerwagen* v. *Crosstown St. Ry. Co. of Buffalo,* 179 N. Y. 99, followed.)

*Matter of N. Y. & Queens El. Light & Power Co.* v. *Delaney,* 190 App. Div. 934, reversed.

(Argued April 14, 1920; decided June 1, 1920.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 21, 1920, which unanimously affirmed an order of Special Term denying, as matter of law, an application for a peremptory writ of mandamus to compel the allowance of certain credits upon assessments of special franchises of the petitioner.

The facts, so far as material, are stated in the opinion.

*Curtis A. Peters* for appellant.  Even if appellant's conduits and cables were maintained upon Queensboro

bridge solely by virtue of the authority of the permits granted by the department of bridges, appellant would be entitled to the credits demanded. (*People ex rel. Nassau Electric R. R. Co.* v. *Grout,* 189 N. Y. 510; *People ex rel. N. Y. Rys. Co.* v. *Prendergast,* 172 App. Div. 128; *Beekman* v. *T. A. R. R. Co.,* 153 N. Y. 144; *City of New York* v. *Bryan,* 196 N. Y. 165.) Appellant is entitled to the credits claimed, even though the payments to the city under the permits were termed " rentals " in the permits. (*Sands* v. *Maistie R. Imp. Co.,* 123 U. S. 294.)

*William P. Burr, Corporation Counsel (William H. King, Eugene Fay* and *Paul F. Loezer* of counsel), for respondents. The revocable permits did not confer any special franchise right to maintain the conduits and cables on the Queensboro bridge and the applicant did not bring itself within the provisions of section 48 of of the Tax Law permitting deduction of payments. (*Schinzel* v. *Best,* 45 Misc. Rep. 455; 109 App. Div. 917; *People ex rel. Bridge Operating Co.* v. *Public Service Comm.,* 153 App. Div. 129; *Matter of New York Railways Co.,* 172 App. Div. 128; *People ex rel. Met. St. Ry. Co.* v. *Tax Comrs.,* 174 N. Y. 417; *People ex rel. Reitsof Mining Co.* v. *Priest,* 75 App. Div. 131; 175 N. Y. 511; *Matter of Cons. Tel. & El. Subway Co.,* 119 App. Div. 835; 189 N. Y. 549; *Heerwagen* v. *Crosstown St. Ry. Co.,* 179 N. Y. 99; *People ex rel. Nassau El. R. Co.* v. *Grout,* 119 App. Div. 130; 189 N. Y. 510.) The payments made by the applicant pursuant to the permits were not in the nature of a tax. (*Heerwagen* v. *Crosstown St. Ry. Co.,* 177 N. Y. 99; *Matter of N. Y. Rys. Co.,* 172 App. Div. 128.) The applicant has not shown that any tax was assessed against its right to occupy portions of the Queensboro bridge under the permits. (*Matter of N. Y. Rys. Co.,* 172 App. Div. 128; Rumsey on Taxation, 23; *People ex rel. Thompson* v. *McComben,* 24 N. Y. S. R. 902.)

HISCOCK, Ch. J.    As its name implies, the relator is engaged in the generation and distribution of electricity in the borough of Queens, city of New York. The Queensboro bridge was constructed at the expense of the city of New York across the East river between the boroughs of Manhattan and Queens. At various dates in the years 1913 and 1915 three several agreements were made by and between the proper city official then known as the commissioner of bridges and the relator, each one providing for the installation on said bridge within the borough of Queens by relator of a conduit in which might be laid one or more of its cables. These agreements, for the purposes of this case, are substantially identical and each one provided that the relator might lay and install such conduit under certain conditions and restrictions and in consideration of its agreement to " pay to the City of New York, through the Department of Bridges, as a rental, the sum of $500 per annum," and that on sixty days' notice in writing it would remove the cable, conduits and fastenings.

For the year 1918 the relator by the proper authorities was assessed upon the special franchises enjoyed and operated by it in the borough of Queens in the sum of $44,405,500 and upon which assessment a tax was levied amounting to the sum of $106,172.55. This assessment included the right to have and operate the conduits upon the Queensboro bridge above mentioned. During the year preceding the date when this tax became due, under the agreements above mentioned the relator paid to the city of New York the sum of $1,500 for the privilege secured by it of having and operating its conduits upon said bridge, and by this proceeding it has sought the right, thus far denied, to have such payment credited upon the tax above mentioned. The application involves the consideration of several questions all of which must be decided in favor of relator before it can secure the relief which it demands.

The first query is whether the rights which relator secured under its agreements with the city are the ones which have been assessed and taxed as a special franchise, because if not, its payments to the city are clearly not deductible. It is suggested by respondents in this connection that the relator may have secured under its general franchises and powers the right to lay and operate its conduits on the bridge and our attention is called to the evidence of one of relator's officers who practically makes this claim. We think, however, that the city is precluded from taking the position that the relator already had the right to cross the bridge with its conduits and that, therefore, no rights were conferred or consideration given for the payments which it was exacting.

The second question is the one whether the permission· to relator to have and operate its cable upon the bridge constituted a right which in connection with its physical property could be assessed as a special franchise. If it could not be relator does not need the relief which it now seeks. We have no doubt that for the purposes of this proceeding it was such a right.

Subdivision 6, section 2, article 1 of the Tax Law (Cons. Laws, ch. 60) provides that " The terms ' land,' ' real estate,' and ' real property,' as used in this chapter include * * * all mains, pipes and tanks laid or placed in, upon, above or under any public or private street or place for conducting * * * electricity * * * including the value of all franchises, rights, authority or permission to construct, maintain· or operate, * * * any * * * conduits * * * for conducting * * * electricity * * *. A franchise, right, authority or permission specified in this subdivision shall for the purpose of taxation be known as a ' special franchise.' " The rights secured and enjoyed by the relator come within these definitions and the city having taken no steps to revoke them, but taking advantage of the assess-

ment which has been made of them as a special franchise, is in no position to question the validity of the assessment. (*People ex rel. Nassau Electric R. R. Co.* v. *Grout,* 119 App. Div. 130; affd., on opinion below, 189 N. Y. 510.)   ·

The remaining question which it is necessary to consider is the most important of those presented to us. It is the one whether the payments made by relator to the city for permission to lay and operate its conduits and wires were of a character which the statute permits to be deducted from its special franchise tax.

The section covering this subject (Tax Law, section 48) provides that if a corporation has paid to a city " for its exclusive use within the next preceding year, under any agreement therefor, or under any statute requiring the same, any sum based upon a percentage of gross earnings, or any other income, or any license fee, or any sum of money on account of such special franchise, granted to or possessed by such   *   *   *   corporation, which payment was in the nature of a tax, all amounts so paid for the exclusive use of such city,   *   *   * shall be deducted from any tax based on the assessment made by the state tax commission for city, town or village purposes, but not otherwise; and the remainder shall be the tax on such special franchise payable for city, town or village purposes."

It is asserted that the sums paid by relator to the city were rent, that they were paid under an agreement and, therefore, were not a tax; that a tax implies and involves compulsion and that these sums were paid by consent. We think that this view involves a misconception of the true nature of the payments and an interpretation of the purpose and meaning of the statute which is too narrow.

While the sums which were paid to the city were denominated as rent in the agreements between it and the relator, they were more than rent in an ordinary

sense.   The controlling object of the relator was not to secure mere physical space on the bridge where its conduits might be laid, but rather to secure the possibility and privilege of carrying on its business beyond the bridge and for that end to obtain permission to carry its conduits and wires across it.   It was seeking to carry on business and not to rent space.   It was intent on securing a franchise and not storage room.   Taking this view we think that the payments which it made to the city were " in the nature of a tax " within the meaning of that statute.   It is true that they were made by agreement and not by the compulsion of ordinary assessment and tax proceedings.   But the statute expressly embraces the two ideas of a sum paid by agreement and yet in the nature of a tax, and, therefore, we are not compelled for the purpose of its interpretation to regard these two features as antagonistic and inconsistent, but rather to adopt an interpretation which harmonizes them.   While no tax official compelled relator to pay these sums, still they were an exaction which it consented to have levied upon it as a condition of the privilege which it secured. This exaction was a burden upon the rights which it enjoyed and in that way in a practical sense in the nature of a tax upon them.

We think that this view, as applicable to this case, is sustained by two other decisions of this court.

The case of *Heerwagen* v. *Crosstown St. Ry. Co. of Buffalo* (179 N. Y. 99) involving a consideration of this statute pertaining to deductions has been cited by the respondents as an authority in their favor.   We think it leads in quite an opposite direction.   The question there was whether the defendant was entitled to apply in reduction of its special franchise tax a sum paid to the city of Buffalo under the so-called Milburn Agreement for the privilege of exercising its franchise.   There was the same fundamental condition there as here that the sum paid and for which deduction was sought was so paid under

agreement and not as the result of compulsory tax proceedings. It was stated in the opinion that "The stipulated payments are really in the nature of rent or a rent charge," but then in addition it was stated that the word " tax " is frequently used in both statutes and judicial decisions in a much more comprehensive sense than can be attributed to it with entire accuracy, and that having in view the purpose of the statute to equalize burdens of taxation as between one whose special franchise is subject to some other payment and one whose franchise is not so subject, by allowing credit on the special franchise tax for the extra payment, the statute should be interpreted as including for credit such payments as had been made by the defendant in that case. The outstanding features of that decision, that the word " tax " is not to be construed narrowly, that the purpose of the statute is to accomplish equality of burdens and that a sum paid by agreement for the enjoyment of the franchise may be credited despite the use of the words " in the nature of a tax " are all applicable to this case.

But the case of *People ex rel. Nassau Elec. R. R. Co.* v. *Grout (supra)* even more fully and directly sustains the position of the relator.

That case involved the question whether the relator was entitled to credit upon its special franchise tax of sums paid to the city of New York under a contract which allowed it to operate its cars upon tracks upon the Brooklyn bridge belonging to the city at a charge or toll of so much per car.

Practically all of the arguments made in this case were there made against the allowance of such credits. But it was there pointed out that the statute spoke in inconsistent terms of sums paid " under any agreement therefor " and also " in the nature of a tax " and that this feature of the statute must be taken into account in construing it, and it was held that a toll of five cents a car, which of course was just as much in the nature of

rental as the present sums, was within the meaning of the statute and that relator was entitled to deduction therefor provided the right which it had secured to cross the bridge was a special franchise, and that so far as this latter question was concerned, the state having treated it as such and the city having taken the benefit of this classification, its officials could not question the nature of the right.

Therefore, we think that the orders which have been made are erroneous and should be reversed, with costs in all courts, and that the application for the writ should be granted, with costs.

CHASE, HOGAN, CARDOZO, MCLAUGHLIN and CRANE, JJ., concur; ELKUS, J., dissents.

Orders reversed, etc.