Bertram Harnett, J.
On April 10, 1968, Broadway Maintenance Oorp. (Broadway) agreed in writing to install the lamps and electric distribution equipment of a new 120-volt street lighting system to be fixed in the Village of Kensington, and to maintain the system over a period of 10 years in return for an annual charge of $5,766.54. Under the agreement, Broadway was to furnish all labor and materials in the operation, maintenance and repair of the system, and retained ownership of the lamps, cables, conduits, wiring and other items. A minimum of 114 installations was specified, placed either upon existing Long *236 Island Lighting Company (LILCO) poles or at such other places as the village might designate. Upon 60-day notice, the village had a wholly discretionary option, as yet unexercised, to purchase Broadway’s property according to a formula specified in the contract.
By separate license agreement with LILCO dated Jannary 22, 1969, Broadway secured the right to install and maintain the street lights on LILCO’s poles. The electricity costs of lighting from LILCO were built in by formula to the contract with the village.
On March 10,1972, the New York State Board of Equalization and Assessment (State Board) determined that Broádway’s arrangement with the village constituted a “ special franchise ”, fixed a tentative assessment at $8,218, later confirmed on June 2,1972 as the full and final valuation, and filed a certified written statement with the Clerk of Kensington exposing Broadway then to a special franchise tax and any consequent lien that may be enforced upon it. Broadway brings this special proceeding pursuant to article 7 of the Beal Property Tax Law seeking to review the State Board’s determination.
There is no indication of when or if the State gave notice of its June 2, 1972 final assessment pursuant to section 618 of the Real Property Tax Law, and therefore no determination can be made here as to whether this proceeding commenced on November 1, 1972 was brought within 60 days of such notice as required by subdivision 1 of section 740 of the Real Property Tax Law. In the absence of a State contention and showing to the contrary, the court must assume proper and timely jurisdiction.
Under section 102 (subd. 12, par. [h]) of the Real Property Tax Law “ real property ” subject to tax liability is defined to include ‘ ‘ special franchises’. Article 6 of the Real Property Tax Law provides for the State Board annually to “ determine the assessment of each special franchise subject to assessment ” (Real Property Tax Law, § 600, subd.-1) which, after due notification to both property owner and village, and filing of a proper certified statement, then subjects the property assessed to “ all taxes and special and ad valorem levies for county, city, town, village, school or special district purposes ” (Real Property Tax Law, § 622). Broadway does not attack the regularity of the State assessment proceedings, nor the dollar figure assessed. Instead, it simply contends that its share of the street lighting contract does not constitute a “ special franchise
Generally, a special franchise is “ the right to do something in the public street, or highway, which, except for the grant *237 under which it is exercised, would be. a trespass ”. (People ex rel. New York Cent. & Hudson Riv. R. R. Co. v. Gourley, 198 N. Y. 486, 492.) Electric light and power facilities on public property are traditionally subject to special franchise assessment. (Matter of New York & Queens Elec. Light & Power Co. v. Delaney, 229 N. Y. 184; People ex rel. Commercial Cable Co. v. State Board of Tax Comrs., 99 Misc. 532.)
Subdivision 17 of section 102 of the Real Property Tax Law specifically defines special franchise as follows: “ ‘ Special franchise ’ means the franchise, right, authority or permission to construct, maintain or operate in, under, above, upon or through any public street * * * conduits, wires or transformers, with their appurtenances, for conducting * * * light, power, electricity, gas or other substance [but] shall not include property of a municipal corporation or special district ”.
A 10-year contract with a village conferring upon a corporation both the authority and obligation to install its property and maintain it in the form of street lights in return for an annual net fee most certainly appears, on its face,, to fall squarely within the statutory definition of “special franchise ”. There can be little doubt that the contract, competitively bid upon, represents a valuable business commodity with substantial annual fee return made possible solely through the village’s exercise of its delegated authority to provide street lighting for its citizens by private contractual franchise. Broadway was indeed granted the “.right, authority or permission to construct * * * conduits [and] wires * * * with their appurtenances, for conducting * * * light, power [and] electricity ”. The matter seems obvious on the face of the statute.
Petitioner’s characterization of its contractual role as solely a “duty” captures only part of the operative agreement which also provides for obligations to run in favor of Broadway. The corporation’s “ duty ” to live up to its part of the contract does not eliminate the rights it conversely enjoys, and, the village-retained right to designate street light locations, or even intensities, does not lessén the substantial value of the minimum installation requirement set at a stated annual fee. When all is said and done, Broadway is saved from being a trespasser with its conduits, wires, and fixtures by an agreement which gives it the right to install them, and then get paid for keeping them working.
Petitioner’s entire case appears to be based on one court opinion, and one Comptroller opinion, neither of which involves the State’s ability to tax the franchise. Cohen v. Village of Kensington (61 Misc 2d 122 [Sup. Ct., Nassau County, Aug. 15, *238 1969]) involved a taxpayer suing to enjoin the village from executing the contract with Broadway without first complying with the statutory procedures required of' franchises. (See Village Law, § 89, subd. 39.) The New York State Comptroller found on January 27, 1969 that such a contract was not a “ special franchise ” under subdivision 39 of section 89 of the Village Law requiring a public hearing. (25 Opns. St. Comp., 1969, p. 35.)
In neither of the two cited authorities was the issue of tax assessments presented for determination. The State Board was not a party in either proceeding.
Moreover, the reasoning in those procedural matters, adopted without cited precedent, is not persuasive. Here, the record 4o date reflects actual ownership and control of the lighting equipment being in Broadway, not the village. While the lighting wires and fixtures are located upon village real property, as indeed all equipment subject to the special franchise “ upon or through a public street” would be, it is undisputed that they remained the property of and were serviced and maintáined, and therefore operated, by Broadway. In the absence of exercise by the village of its option to purchase, it may not avail itself of the statutory exclusion from “ special franchise ” definition for “ property of a municipal corporation ”.
The previously advanced reasoning of the tax winding up in village hands is not complete. The “ special franchise” tax funds are distributed to State, county and municipal governing units, not merely to the latter. The tax is a State levy upon a private party on a right conferred upon that private party by a village acting to fulfill its local street lighting responsibility, a function delegated by the State itself. (Buffalo Gas Co. v. Volz, 31 Misc. 160, 163.) It has a very definite State component in both property and revenue aspect. Moreover, the source and final destination of unearmarked tax revenues and the market effect of a tax imposed have never been recognized as grounds for abrogating a legislative directive to assess and collect a tax in the first’ place. The statute is clear on its face and must be ' enforced unless or until the.Legislature, by finding its purpose not served or for any other reason, amends it.
Finally, the understanding of the locally contracting parties as to a possible State tax assessment and the absence of that cost ingredient in the set contract price, is not authority for that proposition, but, in this case, was an erroneous assumption now corrected, possibly the subject for future negotiation.
Here, local authorities who ultimately are in charge of assessing and collecting the tax, may prefer pot to tax entities with *239 whom they do business on the belief that any such assessment will merely drive up the cost of the product or service purchased. But, the State Board has paramount authority in such matters. (Colonial Pipeline Co. v. State Bd. of Equalization & Assessment of State of N. Y., 38 A D 2d 869.) Subdivision 3 of section 202 of the Real Property Tax Law provides: “ Notwithstanding the provisions of this or any other law, neither the commissioner for local government nor any other board, agency, officer or employee of the office for local government shall in any way direct, review, modify or reverse any decision or finding of the state board of equalization and assessment ”.
That the village here did not provide a public hearing such as required for the granting of a franchise is not binding upon the State Board’s determination for tax assessment purposes, nor is that procedural issue now before this court. But, insofar as the reasoning of the State Comptroller’s opinion tangentially relates to the “ special franchise ” issue here, the court notes its belief that the award of a 10-year street lighting contract to a corporate electrical contractor, who is paid by local funds to install and maintain street lights, which it owns privately, is far more than the village “ grant[ing] itself a franchise ”. (25 Opns. St. Comp., 1969, pp. 35, 36.)
An earlier precedential predecessor in the street lighting contractual travails of the Village of Kensington, Cohen v. Village of Kensington (Index No. 3904/67, Sup. Ct., Nassau County) now cited by petitioner, is also not material to the issues of this case. That lawsuit was brought in 1967 by the same taxpayer, Cohen, to compel the village to have open bidding for the street lighting contract then accorded to LILCO at an annual charge in excess of $2,500. The court, by memorandum decision dated April 24,1967, found that a contract of that proportion must be awarded after advertising and competitive bidding pursuant to section 103 of the General Municipal Law which was subsequently done resulting in the contract disputed here. Nowhere in that case was the “ special franchise ” issue raised and the holding does not bear upon the tax consequences of the contract so awarded.
The village and Broadway claim to have followed their belief and predicated their contractual relationship upon a legal interpretation that this contract was not a ‘ ‘ special franchise ’ ’. But, that position appears now to be erroneous, however well-intentioned, and the resulting consequences must now be reckoned with. And, while the State’s four-year delay in making its *240 assessment of the 1968 contract is not explained, that lapse cannot in any event bar the valuation for the current year.
Accordingly, respondent’s motion for summary judgment is granted, and petitioner’s like motion is denied. The petition is dismissed.