OPINION OF THE COURT
Allen Murray Myers, J.
In this CPLR article 78 proceeding, petitioner seeks to compel respondents to perform their alleged duties under section 626 of the Real Property Tax Law.
Petitioner is a corporation engaged primarily in the pur *442 chase, manufacture, and distribution at retail of natural and synthetic gas, in an area consisting of the Boroughs of Brooklyn, Staten Island, and a portion of Queens. Pursuant to a May 29, 1956 agreement (the Agreement), petitioner was awarded a franchise to lay, construct, maintain and operate pipes, mains and other conductors and appurtenances for the purpose of distributing gas to! Staten Island consumers. Section 12 of the Agreement obligates petitioner to pay to respondent City of New York, as comjpensation for the franchise (i.e., a franchise fee), 3% of gross receipts derived from the sale of gas under the Agreement. Petitioner has duly paid this franchise fee each fiscal year from 1956 through 1979.
Section 626 of the Real Property Tax Law provides that: "1. When a tax levied on a special franchise is due in any assessing unit, if the special franchise owner has paid such assessing unit for its exclusive use during the past year under any agreement or statute requiring the same, a sum based upon a percentage of gross earnings or other income, a license fee or other sum of money on account of such special franchise possessed by such special franchise owner, which payment was in the nature of a tax, all amounts so paid * * * shall be deducted from the tax * * * and the remainder shall be the tax on such special franchise payable for such purposes.” Petitioner pays special franchise taxes of several million dollars each fiscal year. Pursuant to subdivision 1 of section 626 of the Real Property Tax Law petitioner seeks to have the franchise fees required by section 12 of the Agreement deducted from such special franchise taxes. The instant petition claims a deduction of $244,458.70 for the fiscal year ending October 15, 1979, and seeks a refund of $1,075,845.48 for overpayments of special franchise taxes (in the form of franchise fee deductions which were not granted) for fiscal years 1956 through 1978.
Respondents argue that (a) the franchise fees payable under the Agreement are not "in the nature of a tax”, and are therefore not deductible under section 626 of the Real Property Tax Law, and (b) in any event, petitioner waived any right to the benefits of section 626 of the Real Property Tax Law by the express terms of the Agreement.
It is generally held that a tax is a forced charge imposed by the sovereign, which is in no way dependent upon the will or contract, express or implied, of the person or entity taxed. *443 (City of New York v Long Is. R. R. Co., 44 NY2d 827; Central Sav. Bank in City of N. Y. v City of New York, 279 NY 266; City of Rochester v Bloss, 185 NY 42.) This narrow construction has not, however, been applied in cases which have construed the scope of the words "in the nature of a tax” in section 626 of the Real Property Tax Law and its predecessor statutes. It is clear that an annual fee paid by a franchise holder, calculated as a percentage of gross receipts, is exactly that type of payment to which the Legislature meant section 626 of the Real Property Tax Law to apply. (Heerwagen v Crosstown St. Ry. Co. of Buffalo, 179 NY 99; Matter of New York & Queens Elec. Light & Power Co. v Delaney, 229 NY 184; Teleprompter Manhattan CATV Corp. v City of New York, 100 Misc 2d 998.) As all language in a statute must, if practicable, be given effect, the controlling consideration "is the fact that unless payments such as that made by [petitioner] fall within the provisions of the statute then there is none to which it can apply.” (Heerwagen v Crosstown St. Ry. Co. of Buffalo, supra, at pp 104, 105.)
Accordingly, the court concludes that the payments made by petitioner pursuant to section 12 of the Agreement were "in the nature of a tax” as contemplated by section 626 of the Real Property Tax Law. The court must therefore address the issue of whether petitioner waived its right to the benefit of the statute.
Section 15 of the Agreement provides: "Payment of Compensation made by the Company to the City pursuant to the provisions of this Contract, shall not be considered in any manner as in the nature of a tax, but such payments shall be made in addition to any and all taxes of whatsoever kind or description which are now or may at any time hereafter be required to be paid by any ordinance or local law of the City or any law of the State of New York”. There is no dispute that the parties to the Agreement intended that section 15 act as a waiver of any tax deduction or credit due petitioner under the predecessor statute to section 626 of the Real Property Tax Law (Tax Law, § 48). Petitioner now contends, 23 years after execution of the Agreement, that the waiver provision violates the public policy implicit in the promulgation of section 626 of the Real Property Tax Law, and is therefore invalid. The court does not agree, for the reasons stated below (while noting that the opposite conclusion was recently reached, under a nearly identical pattern of facts, by *444 Mr. Justice Evans in Teleprompter Manhattan CATV Corp. [supra]).
It is well established that parties are permitted to intelligently and voluntarily waive statutory and/or constitutional rights, unless such waiver contravenes public policy considerations. (Estro Chem. Co. v Falk, 303 NY 83; Matter of Abramovich v Board of Educ., 62 AD2d 252.) The court finds that petitioner’s knowing waiver of its statutory rights under section 626 of the Real Property Tax Law does not adversely affect the public interest, and should therefore be given full force and effect.
It is absurd to argue, as does petitioner, that the Legislature enacted section 626 of the Real Property Tax Law in the interest of public policy favoring uniform taxation of corporations, thus, ipso facto any waiver of benefits accorded by section 626 of the Real Property Tax Law necessarily violates public policy. It is fair to assume that all statutes (and, perhaps even more so, constitutional provisions) are meant to further the public interest. Yet even the most basic and "public-oriented” statutory ancl constitutional rights may be waived. Criminal defendants, with literally their lives at stake and with possibly only the vaguest notion of the consequences of their acts, are permitted to waive their right to remain silent, to be represented by coujnsel, or to be tried by a jury of their peers; the benefits reaped by any such waiver are often questionable, if not nonexistent. Petitioner, by contract entered into after extensive negotiations conducted by eminent counsel, may certainly waive its entitlement to a tax deduction, in partial consideration for the award of an exclusive franchise which has produced millions of dollars in corporate profits. (See City of Ithaca v Ithaca St. Ry. Co., 145 App Div 675.)
The vital issue is thus not whether section 15 of the Agreement attempts to avoid a public policy espoused by the Legislature, but whether said waiver prejudices the interest of the general public. No such prejudice can be found where it is clear that the respondent City of New York has several alternative methods available to exact franchise fees (or their equivalent) from petitioner (see discussion in Teleprompter Manhattan CATV Corp. v City of New York, supra, at pp 1001-1002; see, also, Tax Law, j§ 1201). It is not improper for respondent to choose a contractual agreement as the means of *445 imposition of such franchise fees (Heerwagen v Crosstown St. Ry. Co. of Buffalo, supra, at p 104).
Finally, it appears that the waiver provisions found in the city’s contracts with petitioner and Teleprompter Manhattan CATV Corp. are common to most, if not all, franchise agreements entered into by the city; some, as in the instant proceeding, were executed many years ago and have long been unquestioned by either the parties involved, or the Legislature and other watchdogs of the public good. If the interests of the public were, in fact, adversely affected by waivers under section 626 of the Real Property Tax Law, the issue of the validity of the waivers would have been brought to light long ago. It is also significant that when the Legislature wants to prevent the waiver of a statute it so provides. See subdivision 2 of section 235-b of the Real Property Law for instance. The Legislature did not do so with reference to section 626 of the Real Property Tax Law.
Accordingly, the court finds the instant petition to be without merit, and this proceeding shall be dismissed.