CHARLES P. BLINN, JR., & others *vs.* WARREN S. DAME & others.

IRVING L. DAME & another *vs.* CHARLES P. BLINN, JR., & others.

Suffolk.    March 18, 1910. — January 2, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Insurance,* Life.    *Practice, Civil,* Parties.    *Assignment,* For the benefit of creditors.
*Covenant,* Of further assurance.

Under the provisions of St. 1894, c. 225, now incorporated in St. 1907, c. 576, § 73, a person to whom a policy of life insurance, issued after April 11, 1894, is made payable by its terms may maintain an action upon it in his own name although not a party to the contract of insurance.

Where a general assignment for the benefit of the creditors of the assignor includes all his "estate, property and effects, real, personal and mixed, of whatever name and nature, legal and equitable, . . . also all claims, debts, choses in action, owing to him, whether now or hereafter payable, and all evidences thereof; . . . except such property as is exempt from being taken on execution by law," the exception refers only to the statutory exemptions stated in R. L. c. 177, § 34, and the instrument conveys to the assignee all the property and property rights of the assignor which the creditors could have reached for the satisfaction of their demands by any process, legal or equitable.

A general assignment for the benefit of creditors, which conveys all property of the assignor legal and equitable except such as is exempt by statute from being taken on execution, and expressly includes "all claims, debts, choses in action, owing to him, whether now or hereafter payable," transfers to the assignee a right of the assignor to surrender a policy of life insurance and take the amount of the surrender value for his own benefit.

In a policy of life insurance the insurance company agreed to pay to "the insured, his executors, administrators or assigns," the sum of $10,000 on a certain day, twenty years from the date of the policy, or if he "should die before that time, then to make said payment to" his two children named, "if they survive the insured (with power to the insured to surrender this policy to said company at any time), otherwise to the insured's executors, administrators or assigns." The policy was assignable by the insured, and contained a statement of what the expected surrender value would be at the end of successive years of the proposed insurance.    The insured made a general assignment for the benefit of creditors, including all choses in action, and the assignee, having obtained possession of the policy, surrendered it to the insurance company and demanded its surrender value, against the objection of the children of the insured named in the policy and of the insured himself.    In suits in equity respectively by the assignee to compel the insurance company to pay to him the surrender value of the policy and by the children of the insured to enjoin such payment, it was *held,* that the right of the insured to surrender the policy at any time for

its surrender value was a chose in action in existence at the time of the assignment and was a valuable right of property of the assignor which passed to his assignee for the benefit of his creditors; and that it was not necessary to decide whether the interest of the children of the insured was a vested one, because, even if it was vested, it was made subject to termination by the surrender of the policy and had been so terminated by the owner of that right.

An assignment for the benefit of creditors, which transferred to the assignee a right of the assignor to surrender a policy of life insurance and receive from the insurance company the amount of its surrender value, contained a covenant of further assurance, by which the assignor agreed to "make such conveyances, deeds or other instruments, and to do all such acts as shall be requisite or advisable to vest in the [assignee] all and every right, interest, and species of property of the [assignor.]" In a suit in equity brought by the assignee against the insurance company and the assignor, to compel the insurance company to pay to the assignee the surrender value of the policy, it was *held*, that under his covenant of further assurance it was the duty of the assignor to execute in favor of the assignee any instrument of surrender that might be necessary to enable him to collect the surrender value of the policy from the insurance company, and that it was the duty of the insurance company upon receiving a proper surrender of the policy to pay its surrender value to the assignee.

TWO BILLS IN EQUITY, the first bill, filed in the Superior Court on January 8, 1910, by the assignees for the benefit of the creditors of Warren S. Dame, under an assignment in writing made by Dame on August 7, 1909, against him, and Irving L. Dame and Mildred F. Dame, his children, and also against the Penn Mutual Life Insurance Company of Philadelphia, a corporation, praying for a decree ordering the defendant corporation to pay to the plaintiffs the cash surrender value of an endowment life policy for $10,000 issued by that defendant to the defendant Warren S. Dame, the plaintiffs' assignor, and ordering the defendant Warren S. Dame to do all acts necessary to entitle the plaintiffs to receive from the defendant corporation such cash surrender value of the policy, and the second bill, filed in the Superior Court on December 17, 1909, by Irving L. Dame and Mildred F. Dame, the children of Warren S. Dame above named, praying for a decree enjoining the plaintiffs in the first suit from surrendering the policy and the defendant corporation from accepting such surrender, and ordering the defendant corporation to deliver the policy to the plaintiffs.

The cases came on to be heard together before *Richardson*, J., who reserved and reported them for determination by this court, such decree to be entered as equity might require.

The policy of insurance was dated July 11, 1898, and contained the following provision:

"In consideration of the application for this Bond or Policy hereby made a part of this contract, the Penn Mutual Life Insurance Company of Philadelphia, insures the life of Warren S. Dame of Boston in the County of Suffolk, State of Massachusetts in the sum of Ten Thousand Dollars, and promises to pay at its Home Office, in the City of Philadelphia, unto Warren S. Dame, the insured, his executors, administrators or assigns, the said sum insured on the Tenth day of July in the year nineteen hundred and eighteen; or if the said insured should die before that time, then to make said payment to Irving L. and Mildred F. Dame, children of the insured in equal shares if they survive the insured, (with power to the insured to surrender this policy to said Company at any time) otherwise to the insured's executors, administrators or assigns the said sum insured, upon receipt of satisfactory proof of the death of the insured, during the continuance in force of this Policy, upon the following conditions, namely:" Here followed a provision in regard to the payment of premiums. Other provisions of the policy are mentioned in the opinion.

The assignment for the benefit of creditors under which the plaintiffs in the first suit made their claim was dated August 7, 1909, and contained the following:

"Now therefore the said Warren S. Dame, in consideration of one dollar, to him paid by the parties of the second part, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, convey, assign, transfer, set over and deliver unto the said Samuel E. Winslow, Charles P. Blinn Jr. and Charles W. Bailey, and the survivor of them and their and his successors, heirs, representatives and assigns, all the estate, property and effects, real, personal and mixed, of whatever name and nature, legal and equitable, and wheresoever situated, belonging to the party of the first part; also all claims, debts, choses in action, owing to him, whether now or hereafter payable, and all evidences thereof; also any and all other property, real or personal, of or belonging to him, of whatsoever description and wheresoever the same may be, including leases which he has or holds of stores numbered 368 through 370 and 374 Washington Street, in

said Boston, and including the good-will and any and all trade names used by or in any way connected with the business carried on' by him, except such property as is exempt from being taken on execution by law."

It contained also the following covenant:

" The party of the first part hereby covenants and agrees to and with the parties of the second part, the survivor of them and their successors, that he will, on request, give him or them all information in his power respecting the assigned property, and make such conveyances, deeds or other instruments, and do all such acts as shall be requisite or advisable to vest in the parties of the second part, the survivor of them and their successors, all and every right, interest, and species of property of the party of the first part as aforesaid, and to carry into effect the true intent and meaning of these presents."

Later Samuel E. Winslow resigned as an assignee, and the plaintiff Charles L. Alvord was appointed in his place in accordance with provisions of the assignment.

Soon after the execution of the assignment for the benefit of creditors, Warren S. Dame delivered the policy to the plaintiff Charles P. Blinn, Jr., at the request of Blinn, in order that Blinn might submit the policy to counsel for an opinion as to whether or not it constituted an asset to which the assignees for the benefit of creditors were entitled.

The assignees, after inspecting the policy and acting upon the advice of counsel, claimed the title to the policy and the right to surrender it and to obtain its surrender value, and asked the officers of the insurance company what steps they should take in order to obtain its surrender value for the benefit of the creditors who had assented to the assignment, those creditors having claims very much in excess of the value of all the assets of the assignor, even though there should be included in such value the amount of the insurance policy, $10,000. The insurance company notified the assignees that it would pay to them the surrender value of the policy on delivery of a written surrender executed by the assignees and by Warren S. Dame, and the assignees requested Warren S. Dame to join with them in executing such a surrender. This Dame refused to do. The assignees thereupon annexed a duplicate of Dame's assignment to the

policy and delivered the policy with the assignment attached to the insurance company. The insurance company was notified by Irving L. Dame and Mildred F. Dame, the plaintiffs in the second suit, of their claim to the policy and that they denied the right of the assignees to surrender the policy without the assent of the assignor and his two children.

The foregoing facts appeared from a statement of agreed facts signed by the counsel of the parties and filed in the two cases. It was agreed that the court might draw inferences of fact from the agreed facts stated.

The case was argued at the bar in March, 1910, before *Knowlton*, C. J., *Hammond*, *Loring*, *Braley*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*C. R. Lamson*, (*W. I. Nottage* with him,) for the assignees of Warren S. Dame.

*H. LeB. Sampson*, for Irving L. and Mildred F. Dame.

SHELDON, J. This policy was issued by the insurance company to Warren S. Dame; the contract of insurance was made entirely between him and the company; the general interest, ownership and right of property in the beneficial stipulations of the policy were vested in him; and before the enactment of St. 1894, c. 225, now contained in St. 1907, c. 576, § 73, any action to recover the amount of the policy must have been brought in his name or in that of his personal representative. *Wright* v. *Vermont Life Ins. Co.* 164 Mass. 302. See *Brown* v. *Greenfield Life Association*, 172 Mass. 498; *Millard* v. *Brayton*, 177 Mass. 533; *Bailey* v. *Wood*, 202 Mass. 562.

The policy was issued however after the St. of 1894, c. 225, had taken effect; and under the provisions of St. 1907, c. 576, § 73, already cited, the limitations made in the policy of its proceeds for the benefit of the children of the insured, who are the plaintiffs in the second suit, are valid and must be enforced in their behalf. If an appointment or settlement has been made upon them by a stipulation in the policy that the amount thereof shall be paid to them, that establishes their right, and their right, once established and brought into being as a vested right, is not to be taken away from them, except as this result shall be found to have been contemplated and provided for by the terms of the appointment itself. We must ascertain therefore the true

construction of this policy as to the disposition of the amount insured, that is, the construction, considering all the terms of the policy, of the promise contained therein.   By that promise the company, reciting that it insures the life of Warren S. Dame, undertakes to pay the sum of $10,000 to him, " the insured, his executors, administrators or assigns," on the tenth day of July, 1918, or if he " should die before that time, then to make said payment to Irving L. Dame and Mildred F. Dame," his children, " if they survive the insured (with power to the insured to surrender this policy to said company at any time), otherwise to the insured's executors, administrators or assigns."   The policy was assignable by the insured ; and it contained a statement of what the expected surrender value, or the amount to be paid by the company to the insured or his assigns on his surrender of the policy, would be at the end of the successive years of the proposed insurance.

It thus appears that the elder Dame, the insured, had several valuable rights in the policy ; and it is difficult to see why his assignment of the policy would not carry with it all his valuable rights, unless we find some restriction in the language of the policy.

1.  If he lived until July 10, 1918, he would be entitled to receive the sum of $10,000.

2.  If he died before that time, that sum would be payable to his personal representatives and would go to increase the amount of his estate unless his children survived him.

3.  At any time during the term of the proposed insurance he could surrender the policy and receive for his own benefit the amount of the then existing surrender value.

The right of his children was to receive the amount of the policy if he did not live until the appointed time and if they survived him and he had not in his lifetime surrendered the policy.   If this right is regarded as contingent, it would not come into existence at all if the father should at any earlier time exercise his absolute right to surrender the policy ; if their right was a vested one, it would be completely divested by their father's exercise of his right.   Their right, in the opinion of the majority of the court, was strictly subordinate to the prior and superior right of their father.   It was so made by the very lan-

guage which created it.   Either it was not to arise at all if the paramount right of their father should be exercised, or it would be completely divested by the exercise of his paramount right to surrender the policy.   Whether their interest was vested or contingent, they could have no part of the proceeds of the policy if their father lived until its maturity, or if they did not survive him, or if he had at any earlier time surrendered the policy. Unless these three contingencies concurred in their favor, either their right never would vest, or it would be completely divested and cut off by the very terms of the conditional limitations in their favor.   We do not deem it material to determine whether their right was vested or contingent ; for as we have seen, the result would be the same in either event.   There is no question here of the attempted revocation of a trust.   Such cases as *Stone* v. *Hackett,* 12 Gray, 227, and *Kelley* v. *Stone,* 185 Mass. 288, and those cases in which an absolute interest was given to beneficiaries of life insurance policies, have no bearing.   We are to construe the language of the policy and to determine what rights it gives to the children.   The statute which has been referred to protects these rights when ascertained, but it has no operation to increase or extend them.

Under this state of affairs, the elder Dame made his assignment to the predecessors of the plaintiffs in the first action, hereinafter called the plaintiffs.   The language of that instrument is broad and sweeping.   It passes all his " estate, property and effects, real, personal and mixed, of whatever name and nature, legal and equitable, . . . also all claims, debts, choses in action, owing to him, whether now or hereafter payable, and all evidences thereof ; also any and all other property, real or personal, of or belonging to him, of whatever description and wheresoever the same may be, . . . except such property as is exempt from being taken on execution by law."   This exception does not cover property which could not be taken on a writ of execution at common law ; it manifestly refers only to the statutory exemptions stated in R. L. c. 177, § 34.   The instrument, we are satisfied, was intended to convey, and does convey, to the assignees all the property and property rights of the assignor which the creditors could have reached for the satisfaction of their demands by any process, legal or equitable.

We do not doubt that the right of the assignor under this policy to receive the amount thereof on July 10, 1918, if he shall then be living, and his right to have the same amount paid to his personal representative upon his earlier decease if his children shall not survive him, would have been available to his creditors and would have passed under the assignment, *Anthracite Ins. Co.* v. *Sears*, 109 Mass. 383. *Lord* v. *Harte*, 118 Mass. 271. *Brigham* v. *Home Life Ins. Co.* 131 Mass. 319. *Pierce* v. *Charter Oak Ins. Co.* 138 Mass. 151. *Haskell* v. *Equitable Assurance Society*, 181 Mass. 341. *Alexander* v. *McPeck*, 189 Mass. 34. *Biggert* v. *Straub*, 193 Mass. 77. It seems equally plain that he may not now, as against his assignees, surrender the policy and take the amount of the surrender value for his own benefit. As against the insurance company no doubt he has that right. But it is a right secured to him by his contract with the company, and is a valuable right of property available to his creditors. See the cases last above cited. It is a chose in action which was in existence at the time of the assignment and passed by its terms.

What we have said is also in our opinion decisive upon the only remaining question in the case. His right of surrender was a valuable property right, vested in him by the language of the policy. It constituted an integral part of the value to him or his estate of the policy itself. That pecuniary value would be very much less either to himself or to any one to whom he might transfer his property rights if this unqualified and paramount right of surrender were not secured to him. There was here an agreement on the part of the company to pay the surrender value to him upon his surrender; this was a contract right given to him by the policy, which materially increased its value to him. This was not merely a right to surrender under the third article or the third clause of the eighth article of the provisions attached to the policy. Under the parenthetical clause contained in the promise of the company he had the right to surrender the policy at any time and to receive its surrender value. Moreover this clause was made a part of the conditional limitation or appointment in favor of his children, apparently for the very purpose of saving to him the absolute ownership and control of the policy. The children's right was made subject to his unrestricted right of surrender. This was a valuable

property right incident to his general right under the policy such as would pass with an assignment of the latter. It now must be held, in the opinion of the majority of the court, that it did pass, with the policy itself, under the general language of the assignment.

We have found no case which seems to us to be quite decisive upon the point raised here, though in some cases the question decided, and in others the reasoning of the courts, approaches it more or less closely. The decisions are not uniform; but the general trend of authority is in favor of our view. See *Atlantic Mutual Life Ins. Co.* v. *Gannon*, 179 Mass. 291; *Travelers' Ins. Co.* v. *Healey*, 25 App. Div. (N. Y.) 53, affirmed in 164 N. Y. 607; *In re Steele*, 98 Fed. Rep. 78; *In re Diack*, 100 Fed. Rep. 770; *In re Boardman*, 103 Fed. Rep. 783; *In re Slingluff*, 106 Fed. Rep. 154; *In re Welling*, 113 Fed. Rep. 189; *In re White*, 174 Fed. Rep. 333; *In re Hettling*, 175 Fed. Rep. 65; *Townsend* v. *Townsend*, 127 Ky. 230.

It follows that under his covenant of further assurance it is the duty of Warren S. Dame now to execute in favor of the plaintiffs any written surrender that may be necessary to enable them to collect the surrender value of the policy in question, and the duty of the insurance company upon receiving a proper surrender of the policy to pay such surrender value to the plaintiffs and in the first case a decree must be entered for the plaintiffs substantially as prayed for. The bill in the second case must be dismissed.

*So ordered.*