LILLIAN FOLEY, Appellant, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

Argued March 1, 1943; decided May 20, 1943.

*Emanuel Redfield* for appellant.

*James D. Ewing* and *Eugene Z. Du Bose* for respondent.

CONWAY, J. There is presented for our determination a question as to the power and authority of a receiver in supplementary proceedings to make an election on behalf of an insured judgment-debtor to receive the cash surrender value or other designated cash value of certain insurance policies under applicable provisions of the policies.

The plaintiff was the wife of the debtor upon whose life twenty-four policies of insurance had been written by the defendant. Twelve of those policies may be designated as Class A policies and the other twelve as Class B policies. All twenty-four provided for a monthly life annuity payment to the debtor after he reached the age of sixty-five years or payment to his executors or administrators if he died before reaching that age.

In the Class A policies there were the following pertinent provisions: "Within three months after default in the payment of any premium after one full year's premium has been paid, the Annuitant may surrender this contract and elect one of the following Options: (a) CASH VALUE. To receive the Cash Surrender Value as provided in Schedule ' C.' (b) PAID-UP LIFE ANNUITY. To purchase a non-participating paid-up Life Annuity with monthly payments * * * [after sixty-five]. If the Annuitant does not elect one of said Options within three months after such default, this contract will become a paid-up Life Annuity as provided under Option (b). * * * "

In the Class B policies the pertinent provisions were: "Within three months after default in the payment of any premium after one full year's premium has been paid, the Annuitant may surrender this contract and elect one of the following Options: (a) CASH VALUE. To receive the Cash Surrender Value as provided in Schedule ' C.' (b) PAID-UP LIFE ANNUITY. To purchase a non-participating paid-up Life Annuity with monthly payments * * * [after sixty-five]. Such paid-up Life Annuity may be surrendered by the Annuitant on any anniversary of the Register date of this contract for its cash value, which shall be an amount equal to the sum which would have been payable in event of the death of the Annuitant at the date of such surrender.

If the Annuitant does not elect one of said Options within three months after such default, this contract will become a paid-up Life Annuity as provided under Option (b). * * * "

It will thus be noted that to obtain the cash surrender value of a Class A or Class B policy the annuitant was required to surrender his policy within three months after default, following the payment of one full year's premium, but that as to the Class B policies a paid-up Life Annuity policy could be surrendered and a cash value, as fixed in the policy, obtained on any anniversary of the Register date of the policy.

In 1934, plaintiff obtained a judgment against the debtor for $16,650. A subpoena was served upon the defendant in supplementary proceedings following the entry of judgment and thereafter an order was made appointing a receiver of the property of the debtor and of all his rights under the policies. On the return date of the motion for the appointment of the

receiver, the brother of the debtor appeared and asserted that the policies had been assigned to him by the debtor by assignment dated November 23, 1935, and the debtor appeared and claimed that the policies were not subject to claims of his creditors under the laws of Pennsylvania of which he was a resident. Nevertheless a receiver was appointed on January 23, 1936, and he was directed, before entering upon the duties of his trust, to execute and file a bond to be approved by the court in a sum designated.

Plaintiff, who subsequently became assignee of the receiver so appointed, and the defendant appear to agree that the date to which the title of the receiver related back under Civil Practice Act, sections 807 and 808 is November 6, 1935, which was the return date of the subpoena served upon defendant, although the subpoena had been served prior thereto, and we shall take that as the appropriate date. (See *Foley* v. *Equitable Life Assur. Soc.*, 173 Misc. 1031, 1032.) The receiver, however, although appointed by order dated January 23, 1936, did not have his bond approved until February 9, *1937*, and it was not filed until four days later.

In the meantime the attorney who represented both the plaintiff and the receiver, following defaults in payments of premiums by the debtor, made demands upon the defendant for the payment of the cash surrender values of the policies. Under applicable provisions of the Class A and Class B policies those demands were timely only as to four of the policies in each class in that they were made within three months after defaults.

In order to assist creditors the Legislature has provided by Civil Practice Act, sections 807 and 808 as follows:

" § 807. Vesting of property in receiver. The property of the judgment debtor, whether acquired before or any time after the appointment of a receiver, is vested in a receiver who has duly qualified, from time of filing the order appointing him or extending his receivership. * * *

" § 808. Extension of receiver's title to personal property. Where the receiver's title to personal property has become vested, as prescribed in the last section, it also extends back by relation, for the benefit of the judgment creditor in whose behalf the special proceeding was instituted, as follows:
* * *

"2. Where an order, subpoena or warrant has not been served, as specified in the foregoing subdivision [on judgment debtor], but an order has been made or subpoena issued requiring a person to attend and be examined concerning property belonging, or a debt due, to the judgment debtor, the receiver's title extends to the personal property belonging to the judgment debtor, which was in the hands or under the control of the person or corporation thus required to attend, at the time of the service of the order or subpoena, and to a debt then due to him from that person or corporation.  *  *  * "

The general rule is well stated in Clark on Receivers, section 223, as follows: " The status of the property and the relations toward it of all parties interested in it, are fixed by the order appointing a receiver and the conditions are not changed by an order providing that the receiver shall give bond for the faithful discharge of his duties in order that the property may be bound and the rights of creditors therein secured. If the jurisdiction of the court over the property did not attach contemporaneously with the order appointing a receiver, the purpose of the court in appointing a receiver might be defeated by the failure of the person appointed receiver to accept the position, or his inability to give the bond required. Or, in the interim between the order appointing a receiver and his giving the required bond, a creditor might obtain an advantage by securing a confession of judgment, and in innumerable other ways. The order for the appointment of a receiver, followed by the consummation of the appointment by the giving of a bond, vests the estate of the judgment debtor in such receiver as of the date of the order, without the execution of any transfer or assignment according to the New York law." See to the same effect, *Matter of Schuyler's Steam Tow Boat Company,* 136 N. Y. 169 (revd. on another point, *sub nom. Moran* v. *Sturges,* 154 U. S. 256, 283, 284); *Matter of Christian Jensen Co.,* 128 N. Y. 550; *Matter of Delaney,* 256 N. Y. 315, 319.

It may well be urged that when the receiver finally qualified by the filing of a bond and his *title* related back, in this instance by seeming agreement of the parties to the return date of the subpoena served upon the defendant, that all the *incidents of title,* including the right of election, should also be related back to the same date. There are some difficulties, however, which

militate against such a holding and which we think are determinative at least in this instance. Assuming that the right of election could be exercised by the receiver before his qualification, there would be no one to whom this defendant could have paid the cash surrender values of the policies. *Non constat,* the receiver might never file a bond or his appointment might be vacated or the proceeding for his appointment abandoned. In the meantime, if there were no person to whom this defendant could make payment of the cash surrender values of the policies, the defendant would have to consider the policies both as potentially paid-up Life Annuity policies and as contracts upon which cash surrender values were due because of an election to terminate the original contracts of insurance, as far as the four Class A and the four Class B policies were concerned. If that could be so for a year, as in the instant case, there is no reason in principle why it could not continue for a much longer period. It seems to us better and more in consonance with orderly procedure both in the administration of court proceedings and in the business of insurance to insist that where there is an election to be made there be prompt qualification by the receiver. We know as a matter of common knowledge that a receiver can qualify almost immediately upon his appointment and, if he be one who cannot so qualify, the court upon prompt application may select one who can, in the infrequent case where an election must be made.

That disposes of all of the Class A policies. These have now become paid-up Life Annuity policies as provided under Option (b). When we turn to the Class B policies a different situation prevails. As to all twelve of them an election could be made, after they had been transformed into paid-up Life Annuity policies, on any anniversary of the Register date of the insurance contract so that a cash value provided for therein might be obtained. Proper demand in writing as to the Class B policies was made on May 18, 1937, and was effective on the first anniversary of the Register date occurring thereafter. As of that anniversary date the nonparticipating paid-up life Annuity mentioned in Option (b) (*supra*) may be surrendered for its cash value, " which shall be an amount equal to the sum which would have been payable in event of the death of the Annuitant at the date of such surrender."

A preliminary question is raised as to the scope of the review here permitted. The Appellate Division reversed on the law and facts but made no new findings of fact. Civil Practice Act, section 602 provided, at the time of the entry of judgment herein, as follows: " Upon an appeal to the court of appeals from a judgment reversing a judgment entered upon * * * a decision or a determination in the trial court, or from an order granting a new trial upon such a reversal, it must be conclusively presumed that the judgment was not reversed, or the new trial granted, upon a question of fact, unless the particular question or questions of fact upon which the reversal was made or the new trial was granted are specified and referred to by number or other adequate designation in the body of the judgment or order appealed from."

The plaintiff has stipulated for judgment absolute and claims that the reversal was upon the law. We have held that ".if there is any question of fact from which opposing inferences can be drawn, the Appellate Division was free, in the exercise of its discretion, to order a new trial." (*World Exchange Bank* v. *Commercial Casualty Ins. Co.*, 255 N. Y. 1, 4.) If there be a question of fact, judgment absolute must be rendered. On the other hand, even though the Appellate Division stated that the reversal was on the law and the facts, should the evidence and inferences point in but one direction, to reverse upon the facts would constitute error of law and we may review the decision. Cohen, Powers of the New York Court of Appeals, page 185 and cases there cited. Here there is no conflicting testimony. The opinion of the Appellate Division indicated that that court considered a blanket demand for the proceeds of the policies as insufficient and that a separate demand for each policy was necessary. Whether or not that was correct under the circumstances is a question of law and judgment absolute should not be rendered thereon as matter of course.

We think that a sufficient demand was made both as to the Class A and the Class B policies. It has already been mentioned that the demand of May 18, 1937, was effective as to the Class B policies on the first anniversary of the Register date occurring thereafter. That demand will also be effective as to the Class A policies at such time in the future as payments become due thereon in accordance with the terms of the policies. In

the stipulation in lieu of examination before trial it is stated that the attorney for the receiver " requested payment to the receiver of the alleged cash surrender value of the retirement annuity contracts " and that he " repeated his request to the said employee [of the defendant] for the payment of the cash surrender values." Those demands were, it is true, made prior to the filing of the bond by the receiver. The letter of May 18, 1937, subsequent to the filing of the bond, demanded that defendant pay over " the proceeds now due on the above-noted policies." In view of the oral demands, correspondence and litigation the defendant unquestionably knew that payment upon *each* of the policies in the two classes was the subject of the demands. The purpose of a demand in an instance such as this, is to inform the party upon whom it is made of the act which it is desired that he perform. Here the defendant was clearly advised that the receiver, the plaintiff's assignor, wished to obtain all the moneys to which the insured judgment debtor was entitled by reason of any action which could be taken by him. A separate demand for each policy was unnecessary under those circumstances.

Further, under the circumstances here, it was unnecessary as far as the defendant was concerned for the receiver to have possession of the policies so as to surrender them. The duties of a receiver in supplementary proceedings are to take possession of tangible property of the judgment debtor and convert it into money; to collect intangible assets; to bring any action relating to property rights that the judgment debtor could bring. The receiver takes the *legal title* to all the personal property of the debtor whether in the hands of the latter or in the possession of others and he has an equitable right to property fraudulently transferred by the judgment debtor. Thus, in *Reynolds* v. *Aetna Life Ins. Co.* (160 N. Y. 635) where a judgment debtor assigned life insurance policies between the time of the appointment of a receiver and the debtor's death, we held that the receiver had legal title to the policies from the time of his appointment although he had no knowledge of the existence of the policies. We said: " What the plaintiff acquired was the legal title to the policies and all the rights of the judgment debtor under them at the time of the plaintiff's appointment." (p. 648.) After the appointment of the receiver

the possession of the policies by the judgment debtor was subject to the receiver's title and he had no right to transfer them nor to appropriate them to his own use.

The defendant further resists judgment upon the ground that the policies have not been surrendered as required by the contracts. The receiver, of course, could not surrender the policies since they were in the possession of the judgment debtor. However, both the debtor and his brother Arthur had appeared on the return of the motion for the appointment of a receiver, January 3, 1936. The debtor then asserted that the policies could not be reached by creditors under Pennsylvania law and his brother asserted that the policies had been assigned to him by assignment dated November 23, 1935, a date subsequent to the date to which the title of the receiver was related back under Civil Practice Act, sections 807 and 808.

We have held in varying situations that the surrender of life insurance policies may be dispensed with, for instance, where the policy has been stolen (*Wilcox* v. *Equitable Life Assur. Soc.,* 173 N. Y. 50), and where the policy has been wrongfully retained so that a proper transfer has been prevented. (*Lahey* v. *Lahey,* 174 N. Y. 146.) The condition of a policy, requiring its surrender, may be disregarded upon proof that performance of the condition is impossible and that the interest of the insurer will not be jeopardized by failure to receive the surrender of the policy. (*Matter of Bartley,* 255 App. Div. 992; *Martin* v. *New York Life Ins. Co.,* 104 F. 2d 573.) Here all the rights of the judgment debtor have passed to the receiver. The only assignment claimed to have been made, when both the debtor and his brother were in court on January 3, 1936, was one to the said brother on November 23, 1935. That assignment was too late to be valid, as we have seen, since it was made subsequent to the service of the subpoena upon the defendant. In the instant action, the defendant interposed an answer which contained affirmative defenses alleging that the policies in suit belonged to a third party by assignment and that they were exempt from the claims of creditors under the laws of Pennsylvania, the State in which the insurance contracts were made. Those two affirmative defenses were stricken out on motion of the plaintiff and an appeal from the order granting that relief has been abandoned. (See *Foley* v. *Equitable Life Assur. Soc.,* 173 Misc. 1031.)

There is here no beneficiary save the insured or his estate. The defendant cannot be subjected to a second payment under these policies. The surrender of the policies is unnecessary for the protection of the defendant.

Since it is not possible on a new trial to alter the facts determining the liability of the defendant the judgment should be modified in accordance with this opinion with costs to appellant in this court and in the Appellate Division. (*Freel* v. *County of Queens,* 154 N. Y. 661, 665, 666; *Heerwagen* v. *Crosstown Street Ry. Co.,* 179 N. Y. 99, 106; *American Guild* v. *Damon,* 186 N. Y. 360, 364.)

The order of the Appellate Division should be reversed and the judgment of the trial court modified in accordance with this opinion, and as so modified affirmed, with costs to the appellant in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS and DESMOND, JJ., concur; FINCH, J., taking no part.

Ordered accordingly.