**UNITED STATES of America,**
**Appellant,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, a corporation, and The Guardian Life Insurance Company of America, a corporation, Appellees.**

**No. 7465.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 8, 1957.

Decided Jan. 14, 1958.

On Rehearing June 10, 1958.

Louise Foster, Atty., Dept. of Justice,
Washington, D. C. (Charles K. Rice,
Asst. Atty. Gen., Lee A. Jackson, Atty.,

Dept. of Justice, Washington, D. C., and Albert M. Morgan, U. S. Atty., Morgantown, W. Va., on the brief), for appellant.

Howard Caplan, Clarksburg, W. Va. (Stewart McReynolds, Stotler, McReynolds & Caplan, Clarksburg, W. Va., George E. Walton, New York City, Charles M. Preston, Daniel J. Reidy, Agnes S. Hunt, New York City, on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the United States from a judgment dismissing, as against two insurance companies, an action to foreclose a tax lien on the cash surrender value of two insurance policies issued to a taxpayer, who had been convicted of tax frauds and had fled from the country. The District Court held that, in the absence of an election by the insured to take the cash surrender value of the policies, he had no property therein to which a lien for taxes could attach, and that, as he had not made such election and had not been personally served with summons in the action so that he could be subjected to an order of court requiring him to make the election, the court was without power to grant relief. The facts are stated in detail in the opinion of the District Judge and need not be repeated here. Those necessary to an understanding of the case are as follows:

Insured, Dr. Milton Alfred Gilmore, is a citizen of West Virginia. On January 16, 1953, he was convicted by a jury of wilfully and knowingly attempting to evade federal income taxes; but, before sentence could be pronounced in the case, he fled into Canada, where he still is. Insured owed income taxes for the years 1942 through 1948, in addition to payroll withholding taxes, which were properly assessed but remained unpaid notwithstanding proper notices and demands made by the Collector of Internal Revenue upon insured and his wife, to whom he had transferred large amounts of cash. Insured held life insurance policies in the Metropolitan Life Insurance Company and the Guardian Life Insurance Company, which had substantial cash surrender values at the time of the institution of this action. Both policies were payable at insured's death to his wife as beneficiary and to his daughter as contingent beneficiary, but each policy reserved to him the right to change the beneficiary at any time.

This action was instituted to enforce the liens of the unpaid federal taxes against insured's interest in the two policies as well as against other property which he owned; and his wife and daughter were named as parties to the action along with insured and the two insurance companies. It was conceded that notice of the tax liens had been served upon the insurance companies in New York as well as in West Virginia. Personal service of process could not be had upon insured or his wife or daughter, but process was served upon them by publication, and was regularly served upon the insurance companies. Judgment was entered enforcing the liens against certain real estate in West Virginia but dismissing the action in so far as it sought to enforce liens against insured's interest in the policies. Only the right of the United States to enforce tax liens against the policies is involved in this appeal.

Three questions are presented by the appeal: (1) Did the insured have a property interest in the insurance policies? (2) If so, was a tax lien in favor of the United States perfected on such interest? (3) Can the tax lien be foreclosed in this action and the interest of insured in the policies be subjected to the satisfaction of the lien? We think that all of these questions should be answered in the affirmative.

1. The Property Interest of Insured in the Policies.

We think there can be no question but that insured had a property interest in the policies. Both policies had a cash surrender value which was with-

drawable at any time and, while the policies were payable at the death of insured to his wife and daughter as beneficiaries, he had reserved the right to change the beneficiaries at any time. He had complete power over the policies, therefore, and could have availed himself of the cash surrender value by surrendering the policies as easily as he could have cashed in a certificate of deposit in a bank by surrendering the certificate. To say that he had no property in the policies because he had not elected to take the cash surrender value and surrender them is as lacking in reality as to say that the holder of a certificate of deposit in a bank has no property therein because he has not elected to cash and surrender it and can receive nothing thereon until he elects to do so. It has been held that the insured has a property interest in a policy which has no cash surrender value but only a borrowing privilege. United States v. Trout, D.C., 46 F.Supp. 484, 485. A fortiori, such property interest exists where there is a cash surrender value and the insured has reserved complete control, not only over this, but also over who may take the proceeds of the policies as beneficiary upon his death.

Very much in point are the cases of Rowen v. Com'r, 2 Cir., 215 F.2d 641; United States v. Behrens, 2 Cir., 230 F.2d 504; United States v. Hoper, 7 Cir., 242 F.2d 468; and United States v. Bess, 3 Cir., 243 F.2d 675. In these cases it was held that a tax lien could be enforced against the proceeds of a policy to the extent of its cash surrender value, even though insured had died and the proceeds of the policy were payable to named beneficiaries. Dealing with this subjection of the cash surrender value to the liens in United States v. Behrens, supra, Judge Learned Hand said:

"The obligation of an insurer in a policy of life insurance is made up of a number of promises, of which one is to pay to the beneficiary the amount of the insurance—the 'proceeds'—and another is to pay the 'surrender value' to the insured upon his demand. The performances of these promises are not only separate, but inconsistent with each other: the payment of the 'surrender value' cancels the promise to pay the 'proceeds' and the promise to pay the 'proceeds' assumes that the insured has not demanded and received the 'surrender value.' * * *

"However, in Rowen v. Commissioner of Internal Revenue, supra, 215 F.2d at page 647, we held that 'it is not realistic to view his' the insured's 'death as wiping out these values. Under the policies, his death was merely a condition upon which the surrender values no longer payable to the decedent became merged in the greater values which the insurers were obligated to pay the beneficiaries.' There can be no doubt that the courts have spoken of the 'surrender value' as though it were in fact a fund which the insurer held as a custodian for the insured. This way of looking at the situation was long ago stated by Judge Addison Brown with his customary clarity, and the Supreme Court has twice quoted what he said with approval. We shall not requote it in full; it is enough to excerpt the following passages. 'Though this excess of premiums paid is legally the sole property of the company, still in practical effect, though not in law, it is the moneys of the assured deposited with the company in advance to make up the deficiency in later premiums * * *. So long as the policy remains in force, the company has not practically any beneficial interest in it, except as its custodian, with the obligation to maintain it unimpaired and suitably invested for the benefit of the insured. This is the practical, though not the legal, relation of the company to this fund.' This language obviously treats the surplus of the paid premiums that makes up the 'surrender value,' as a 'fund' held for the insured, and, if

it were such, the lien would follow it into the 'proceeds.'"

This is in accord with the holding of the Supreme Court in Burnet v. Wells, 289 U.S. 670, 679, 53 S.Ct. 761, 764, 77 L.Ed. 1439, where Mr. Justice Cardozo, speaking for the court, said:

"A policy of life insurance is a contract susceptible of ownership like any other chose in action. It 'is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium.' It is 'an entire contract of assurance for life, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums.' N. Y. Life Insurance Co. v. Statham, 93 U.S. 24, 30, 23 L. Ed. 789; Vance on Insurance, pp. 260, 262 and cases there cited. One who takes out a policy on his own life, after application in his own name accepted by the company, becomes in so doing a party to a contract, though the benefits of the insurance are to accrue to some one else. Mutual Life Ins. Co. of New York v. Hurni Packing Co., 263 U.S. 167, 177, 44 S.Ct. 90, 68 L.Ed. 235; Vance on Insurance, pp. 90, 91, and 108. The rights and interests thereby generated do not inhere solely in those who are to receive the proceeds. They inhere also in the insured who in co-operation with the insurer has brought the contract into being. * * * The contracts remain his, or his at least in part, though the fruits when they are gathered are to go to some one else."

As said by Mr. Justice Holmes in Grigsby v. Russell, 222 U.S. 149, 156, 32 S.Ct. 58, 59, 56 L.Ed. 133, "Life insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property."

In cases arising under state statutes, where the question is whether there is an indebtedness owing the insured by the company, the majority holding is that the interest of the insured under the policies is not subject to attachment or garnishment. See note 37 A.L.R.2d 271 et seq. In cases arising under the bankruptcy act, 11 U.S.C.A. § 1 et seq., however, where the question is whether the insured has a property interest which vests in the trustee in bankruptcy, it has generally been held that he does have such interest if he has reserved the right to change the beneficiary and the policy has a cash surrender value. Notes 68 A.L.R. 1216 and 1232, 103 A.L.R. 240, 169 A.L.R. 1381 and 1386. This has been expressly decided by the Supreme Court of the United States. Burlingham v. Crouse, 228 U.S. 459, 473, 33 S.Ct. 564, 57 L.Ed. 920; Cohen v. Samuels, 245 U. S. 50, 52-53, 38 S.Ct. 36, 37, 62 L.Ed. 143. In the case last cited, the court adverted to the provision of the bankruptcy act as to the vesting in the trustee of policies payable to the insured, his estate or his personal representative, and said:

"It is true the policies in question here are not so payable, but they can be or could have been so payable at his own will and by simple declaration. Under such conditions to hold that there was nothing of property to vest in a trustee would be to make an insurance policy a shelter for valuable assets and, it might be, a refuge for fraud."

The fact that the insured has a property interest in a policy having a cash surrender value and subject to change of beneficiary by him has been recognized in a number of cases in which creditors have resorted to equitable remedies or to supplementary proceedings, which are equitable in their nature, to reach the interest of the insured. See Foley v. Equitable Life Assur. Soc., 290 N.Y. 424, 49 N.E.2d 511; Rubenstein v. Rubenstein, Sup., 105 N.Y.S.2d 24; Anthracite Ins. Co. v. Sears, 109 Mass. 383; Biggert v. Straub, 193 Mass. 77, 78 N.E. 770, 118 Am.St.Rep. 449; notes 37 A.L.R.2d 291 et seq. And it has been held that the rights of the insured under such a policy

are property rights which pass to an assignee under a general assignment for the benefit of creditors. Blinn v. Dame, 207 Mass. 159, 93 N.E. 601, 20 Ann.Cas. 1184 and note.

## 2. The Perfecting of the Tax Lien.

■ We think that there can, likewise, be no question but that a tax lien was perfected by the United States upon the insured's interest in the insurance policies. When Dr. Gilmore fled to Canada he left unpaid the taxes here asserted by the government which became liens upon all his property, including his interest in these policies, when the assessment list was received by the Director of Internal Revenue. Sections 3670 and 3671 of the Internal Revenue Code of 1939, which are the statutes here applicable, provide:

"§ 3670. *Property subject to lien.* If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. 1952 ed., sec. 3670.

"§ 3671. *Period of lien.* Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S. C. 1952 ed., sec. 3671.

In the following cases it has been squarely held that, where the provisions of the taxing statute are followed, a tax lien is perfected upon the cash surrender value of a policy of insurance issued to taxpayer upon his life. Kyle v. McGuirk, 3 Cir., 82 F.2d 212; Cannon v. Nicholas, 10 Cir., 80 F.2d 934; United States v. Royce Shoe Co., D.C.D.N.H., 137 F.Supp. 786; Knox v. Great West.

Life Assur. Co., D.C.E.D.Mich., 109 F. Supp. 207, affirmed 6 Cir., 212 F.2d 784; United States v. Ison, D.C.S.D.N.Y., 67 F.Supp. 40; Smith v. Donnelly, D.C.E.D. La., 65 F.Supp. 415; United States v. Prudential Ins. Co., D.C.E.D.Pa., 54 F. Supp. 664.

There is no question here of the rights of third parties as assignees. Notices were duly given the insurance companies of the tax liens here sought to be enforced; and there is no contention that anything had been paid under the policies or that they had been assigned to anyone prior to the giving of the notices or the institution of the action. The property rights of the insured in the policies were held thereafter subject to the liens of the government, and the insurance companies were charged with notice of such liens and were bound to take them into account before making any payments to the insured under the terms of the policies. See United States v. Eiland, 4 Cir., 223 F.2d 118.

It is said, relying upon such cases as United States v. Metropolitan Life Ins. Co., 2 Cir., 130 F.2d 149, and United States v. Penn Mut. Life Ins. Co., 3 Cir., 130 F.2d 495, 142 A.L.R. 888, that unless the insured has exercised his option to take the cash surrender value under the policy, there is nothing to which the lien provided for by statute can attach. As pointed out above, however, insured unquestionably has a property right under the policies, the value of which is measured as a practical matter by the cash surrender value, and we do not think that the right of the government to reach such property for taxes can be defeated by the fact that the insured has not made an election under the policies. This is the effect of the decisions, heretofore cited of Rowen v. Com'r, supra, 2 Cir., 215 F.2d 641; United States v. Behrens, supra, 2 Cir., 230 F.2d 504; United States v. Hoper, supra, 7 Cir., 247 F.2d 468; and United States v. Bess, supra, 3 Cir., 243 F.2d 675.

The promises of the companies with relation to the cash surrender values amount to promises to pay these to the

insured on his demand; and where his rights under the policies are subjected to tax liens, the right to demand the cash surrender value is vested in the government to the extent necessary to satisfy the liens. As said by this court in United States v. Eiland, supra, which dealt with a lien created by statutory attachment and garnishment on an ordinary debt, 223 F.2d 118, 121:

"A creditor ordinarily perfects a lien upon a debt by attachment and garnishment with service of notice thereof upon the debtor. See Miller v. United States, 11 Wall. 268, 297, 20 L.Ed. 135; Kennedy v. Brent, 6 Cranch 187, 3 L.Ed. 194; Rickman v. Rickman, 180 Mich. 224, 146 N.W. 609, Ann.Cas.1915C, 1237, 1248; Strawberry Growers' Selling Co. v. Lewellyn, 158 La. 303, 103 So. 823, 39 A.L.R. 1502; 4 Am.Jur. p. 896; 5 Am.Jur. p. 94; 7 C.J.S. Attachment § 224, p. 403. When this has been properly done, the effect thereof is to give to the attaching creditor a lien upon the indebtedness for the amount necessary to satisfy the judgment rendered in the proceedings in his favor. The effect of the federal taxing statutes to which we have referred is to create a statutory attachment and garnishment in which the service of notice provided by statute takes the place of the court process in the ordinary garnishment proceeding. There is no necessity for adjudicating the amount of the tax under the statutory proceeding, United States v. Morris & Essex R. Co., 2 Cir., 135 F.2d 711, certiorari denied Morris & Essex R. Co. v. Delaware, L. & W. R. Co., 320 U.S. 754, 64 S.Ct. 61, 88 L.Ed. 449; and, consequently, the service of such notice results in what is virtually a transfer to the government of the indebtedness, or the amount thereof necessary to pay the tax, so that payment to the government pursuant to the levy and notice is a complete defense to the debtor against any action brought against him on account of the debt."

When the insured's interest in the policies is subjected to the tax lien under this proceeding, this amounts to a seizure of such interest by the United States (United States v. Miller, 11 Wall. 268, 297, 20 L.Ed. 135); and the United States, by virtue of such seizure, may exercise any right which the insured might have exercised under the policies, including the election to take the cash surrender value.

3. The Sufficiency of the Proceeding.

We think it clear that the proceeding here, which was instituted under 26 U.S.C. § 7403, was sufficient to foreclose the tax lien asserted on the policies and to protect the interest of the insurance companies. Not only were the insured and the companies made parties to the proceeding, but the beneficiaries under the policies were also made parties. As the insured was not present within the state, it was proper that he be served by publication so that the court might foreclose the tax lien upon his property. 28 U.S.C. § 1655.[1] And as the insurance

1. That section is as follows:

"In an action in a district court to enforce any lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to, real or personal property within the district, where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain.

"Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks.

"If an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action. When a part of the property is within

companies were present doing business within the state, it was clearly proper that the suit be brought there to reach insured's interest in the policies. Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023. There is no reason why the court should not determine the value of the insured's interest under the policies and direct that this be paid upon the tax liens asserted by the government, nor why this will not fully protect the companies with respect to their obligations under the policies in the same way that a debtor garnishee is protected in any garnishment proceeding. The statute under which the proceeding was instituted is as follows:

"(a) *Filing.*—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

"(b) *Parties.*—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

"(c) *Adjudication and Decree.*— The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property,

by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

The action taken by the United States in asserting the lien and instituting this action for its foreclosure amounted, as heretofore stated, to a seizure of the insured's property in the policies; and the court was vested with full power to enter judgment with respect thereto. That the insurance companies are fully protected by judgment rendered in the proceeding and that the proceeding may be brought against them wherever they are doing business, see Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625.

It is argued that, although cash surrender value of the policies might be subjected to the tax lien if service of process could be made personally upon the insured and he could be required to elect to receive the cash surrender value, this may not be done in an action in rem, where the insured cannot be subjected to an in personam judgment or required to make such election. We see no reason for such distinction. The interest of the insured in the policies has been brought under the jurisdiction of the court in what is essentially a garnishment proceeding in so far as it relates to his interest in the policies and the promises for his benefit therein contained. 5 Am.Jur. sec. 657. The court can unquestionably condemn the interest of the insured under the policies to the satisfaction of the lien and can direct that such interest be paid by the insurance companies to the United States, the holder of the lien. This interest is the cash surrender value of the policies. It is argued, however, that the court may not do this, because the policies must be surrendered as a condition to obtaining the cash surrender value; but the surrender is for the pro-

---

another district, but within the same state, such action may be brought in either district.

"Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside the judgment and permit such defendant to plead on payment of such costs as the court deems just."

tection of the companies and they will be as well protected by the judgment of the court as by the surrender of the policies, since the policies are not negotiable. See Foley v. Equitable Life Assur. Society, 290 N.Y. 424, 49 N.E.2d 511, 514; Rubenstein v. Rubenstein, Sup., 105 N.Y.S. 2d 24; United States v. Manufacturers' Trust Co., 2 Cir., 198 F.2d 366, 369; Harris v. Balk, supra. Of course, surrender of the policies should be ordered if the policies are available for surrender. When, however, they are unavailable for surrender, because the owner has absconded to a foreign country and is beyond the reach of personal process, and when the interest of the insurer will be protected by the judgment of the court, the insurer should be required to pay the cash surrender value in the proceeding under the statute.

To sum up, we think that the insured unquestionably had a property interest in the policies in question; that the value of this property interest was the cash surrender value of the policies; that this property interest was subjected to the lien for taxes when the assessment list was placed in the hands of the Director of Internal Revenue; that the insurance companies were fixed with notice of the lien when notices were served upon them; that the proceeding instituted under 26 U.S.C. § 7403 was a proper proceeding to foreclose the lien; that the government as holder of the lien can elect in the proceeding to take the cash surrender value of the policies; and that a decree of the court directing that the cash surrender value of the policies be paid to the United States will protect the insurance companies from further liability under the policies. As said by Judge Harrison in United States v. Trout, supra, [46 F.Supp. 485] we "see no reason to uphold a taxpayer who admits he has an interest in property but flauntingly says it is beyond the reach of the Government." To which we may add that the court is not so impotent that it cannot apply to the satisfaction of tax liens property interests of a taxpayer held by corporations within its jurisdiction.

The judgment appealed from should be reversed and the case remanded to the District Court for further proceedings.

Reversed and remanded.

On Rehearing

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PER CURIAM.

■■ The lien was perfected by the Commissioner's demand on the insured before he absconded from the jurisdiction of the District Court. Notice of lien was filed with the Clerk of the County Court at Parkersburg, West Virginia, before he absconded. Secs. 3670, 3672, I.R.C.1939 (26 U.S.C.A.). The lien then attached to the cash surrender value, which we regard as a fund held by the insurance company for the insured. United States v. Behrens, 2 Cir., 230 F. 2d 504; United States v. Hoper, 7 Cir., 1957, 242 F.2d 468; United States v. Bess, 78 S.Ct. 1054.

■■ The court proceedings to foreclose the lien were, as was said in the court's opinion, in the nature of a garnishment. A lien would be worthless if, after being perfected, it could be vitiated by the insured's leaving the jurisdiction. Although he left, the res remained behind, and the Government's rights therein had already attached. As this Court held in United States v. City of Greenville, 1941, 118 F.2d 963, 965. "After the lien provided by the statute attaches, the property has in a sense two owners, the taxpayer and, to the extent of the lien, the United States."

The jurisdictional objection is not well taken. In the case relied on by the appellee, Stockbridge v. Phoenix Mutual Life, D.C.Conn.1912, 193 F. 558, there was no lien, and therefore no sufficient res to support jurisdiction, while here the contrary is true.

We adhere to the views previously expressed.