**UNITED STATES of America**

v.

**Samuel C. BRODY and the Equitable Life Assurance Society of the United States.**

**Civ. A. No. 61–835.**

United States District Court
D. Massachusetts.

Feb. 12, 1963.

W. Arthur Garrity, Jr., U. S. Atty., Daniel B. Bickford, Asst. U. S. Atty., for plaintiff.

James Lynch, Jr., Boston, Mass., for Equitable Life Assur. Soc. of U. S.

WYZANSKI, District Judge.

The Government has moved for summary judgment in an action to foreclose tax liens on insurance policies.

April 18, 1960, the District Director of Internal Revenue, having assessed against Brody federal taxes amounting to $193,136.12 plus interest, and having vainly demanded payment by Brody, served upon The Equitable Life Assurance Society a notice of levy. The notice, after referring to the lien provided for by § 6321 of the Internal Revenue Code of 1954 [see 26 U.S.C., 1958 ed., § 6321] stated that "all property * * * [and] credits * * * now in your possession and belonging to this taxpayer (or with respect to which you are obligated) * * * and all * * * obligations owing from you to this taxpayer are hereby levied upon and seized for satisfaction of the aforesaid tax."

Previously Equitable had issued two policies upon the life of Brody.

(1) Policy 11,653,183, in the face amount of $30,000, is a 15 year endowment plan policy issued in 1943. It matured as an endowment on April 28, 1958, and (after deduction of a policy loan) had a value of $3,821.15, as of the date of defendant's answer on December 15, 1961. The policy provides that the insurer will pay to the insured the face amount (less, of course, loans, etc.) on April 28, 1958 "provided * * *

this policy is then in force and is then surrendered properly released."

(2) Policy 10,777,528, in the principal sum of $1,000, is a policy on the convertible plan with the right to change the policy reserved to Brody. In July 1956 Brody elected to convert this policy to an endowment policy to mature January 21, 1962. In June 1956 Brody prepaid all remaining premiums. On January 24, 1957, at Brody's request, the Equitable endorsed a change of beneficiary to the "U.S. Treasury Department—Internal Revenue Service" as beneficiary for any death benefit. Brody remained the endowment payee. The policy provides that the insurer will pay the insured on January 21, 1962 the face amount (less, of course, loans, etc.) "provided * * * this policy * * * is then surrendered properly released."

October 27, 1961 the United States filed in this Court its complaint, seeking enforcement of its tax liens, and naming as defendants Brody and the Equitable. Brody, although he had been a resident of Massachusetts, was not found in this District and was not served personally. Equitable, being authorized by the Commonwealth of Massachusetts to do business here, answered on December 15, 1961. It defended on the ground that the venue of this action did not lie in Massachusetts, that Brody was an indispensable party, and that until the policies were surrendered Equitable was under no liability.

July 9, 1962, on motion by the United States, this Court, pursuant to 28 U.S.C. § 1655, as construed in United States v. Metropolitan Life Ins. Co., 4th Cir., 256 F.2d 17, 23–24, and United States v. Hopkins, S.D.N.Y., 193 F.Supp. 207, 210, ordered service by publication on Brody.

December 18, 1962 the United States filed a motion for summary judgment, accompanied by an affidavit and certificates. February 4, 1962 Equitable filed an affidavit which does not contradict any of the material facts alleged by the Government, but which does state that a Florida attorney of Brody has the two policies in Miami Beach.

For the following reasons this Court has concluded to grant the Government's motion.

1. Jurisdiction of this Court rests upon 28 U.S.C. § 1340 which provides that "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue."

2. Alternative statutory bases justify laying the venue of this action in this District. 28 U.S.C. § 1391(c), providing that "A corporation may be sued in any judicial district in which it is * * * licensed to do business", applies to a suit against Equitable, which is licensed to do business in Massachusetts. 28 U.S.C. § 1396, providing that "Any civil action for the collection of internal revenue taxes may be brought in the district where the liability for such tax accrues, in the district of the taxpayer's residence, or in the district where the return was filed," applies to this action for the collection of internal revenue taxes due from Brody whose liability for tax accrued in Massachusetts and who filed his tax here.

3. § 6321 of the Internal Revenue Code of 1954, 26 U.S.C., 1958 ed., § 6321, provides that "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." In construing the predecessor of this statute, § 3670 of the Internal Revenue Code of 1950, which used identical words, the Supreme Court held that the interest which an insured had in the cash surrender value of a life insurance policy constituted "property or rights to property." United States v. Bess, 357 U.S. 51, 56, 78 S.Ct. 1054, 2 L.Ed.2d 1135. *A fortiori* the interest which Brody as endowment payee had in (1) a matured endowment policy and (2) an unmatured but fully paid endowment policy constituted "property" or "rights to property" upon which the United States had a tax

lien under § 6321 of the Internal Revenue Code of 1954. For, as endowment payee, Brody had a right to a cash surrender value under the second policy, and he had a right to the full value under the first policy.

▮ 4. However, Equitable argues that the Government's lien is not enforceable because this Court has not within its jurisdiction the policies themselves, and, Brody not having appeared, this Court cannot compel the Florida attorney to bring these policies from Miami Beach. At the root of that argument is the misconception that the insurance policies here involved are specialties embodying rights of action, and analogous to investment securities which cannot be levied upon until the security is actually seized. Cf. Uniform Commercial Code § 8–317(1); Mass.G.L. c. 106 § 8–317(1). But in a non-negotiable policy the instrument itself is not the vital thing; rights in connection with it do not pass to one who is merely a bona fide transferee for value of the instrument itself. Interests in a non-negotiable insurance policy, like interests in any contract, are incorporeal choses in action. When a court has jurisdiction over the obligor, that is, the insurance company, it has power effectively to deal with the obligation. United States v. Metropolitan Life Ins. Co., 4th Cir., 256 F.2d 17, 21–24; Biggert v. Straub, 193 Mass. 77, 78 N.E. 770. The Court may acquire jurisdiction over the obligor not merely at its home office but wherever he or it is subject to service. United States v. Hopkins, S.D.N.Y., 193 F.Supp. 207, 210. This is no more than a specific instance of the principle that "A court by proper service of process may acquire jurisdiction to apply to the satisfaction of a claim an obligation owing to the person against whom the claim is asserted, if the court has jurisdiction over the obligor, although it has not jurisdiction over the person against whom the claim is asserted." Restatement, Judgments § 36. Cf. Chicago, Rock Island and P. Ry. v. Sturm, 174 U.S. 710, 716, 19 S.Ct. 797, 43 L.Ed. 1144; Harris v.

Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023.

▮ 5. Furthermore, Equitable is mistaken in assuming that because Brody has not personally appeared in this case, and has not been personally served, Equitable may later be required to make a second payment to Brody. In this case this Court caused Brody to be served by publication, pursuant to 28 U.S.C. § 1655. "As the insured was not present within the state, it was proper that he be served by publication." United States v. Metropolitan Life Ins. Co., 4th Cir., 256 F.2d 17, 23. A fortiori service by publication was proper because Brody was a fugitive who chose to leave no address. Service by publication having been a reasonable step to notify Brody, a judgment here against Equitable will constitute a bar to any future action by it against Equitable. Restatement, Judgments, § 36, Comments (c) and (d). Moreover, to treat it as a bar will not offend due process of law standards. Cunnius v. Reading School Dist., 198 U.S. 458, 25 S.Ct. 721, 49 L.Ed. 1255. See Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865, first full paragraph; Walker v. City of Hutchinson, 352 U.S. 112, 115–116, 77 S.Ct. 200, 1 L.Ed.2d 178. Cf. Note 73 Harv.L.Rev. 909, 987–991.

▮ 6. Equitable also argues that, apart from general considerations, these particular insurance policies preclude this Court from enforcing the Government's lien unless the Government causes the policies themselves to be surrendered. The contention is that these policies specifically make it a condition precedent to Equitable's duty to pay that it receive a surrender of the policies themselves. Admittedly such a contention finds support in the discredited rulings in United States v. Mass. Mut. Life Ins. Co., 1st Cir., 127 F.2d 880, 883 and United States v. Penn. Mut. Life Ins. Co., 3rd Cir., 130 F.2d 495, 497–498. Those cases erroneously assumed that before the insured surrendered his policy and fixed his and his beneficiary's rights

thereunder, the insurer had no obligation to the insured which could properly be described as the insured's "property" or "rights to property." That assumption was rejected in United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135, cited earlier, where it was held that quite apart from any surrender of his policy the insured had a property upon which the tax collector could levy.

7. The surrender of the policies themselves would be a formality serving absolutely no purpose in the case at bar. Neither policy is negotiable. By *now* both policies have matured and there could be no claimants except persons who derived through Brody, the endowment payee. Even when this action was brought, that is, even before the second policy had matured, the only potential beneficiary of a death payment was the plaintiff in the case, the United States. So the insurance company never ran any risk that upon these policies a valid claim could be made by some one not a party or privy to this case. And indeed it is not clear how at any time possession of the policies themselves would, except in an evidential sense, help any claimant thereunder.

8. But there is a principle, broader than the facts just recited, which shows that there is no merit to Equitable's contention that it is entitled to get the policies before it makes payment. The only substantive reason for an insurer wanting the policies themselves is to preclude groundless claims based thereon after the policies had been fully paid. But against such groundless claims Equitable "will be as well protected by the judgment of the court as by the surrender of the policies, since the policies are not negotiable." United States v. Metropolitan Life Ins. Co., 4th Cir., 256 F.2d 17, 25; United States v. Hopkins, S.D.N.Y., 193 F.Supp. 207; United States v. Ball, W.D.Va., 207 F.Supp. 835.

To refuse the United States the right to reach Brody's property because it has not produced Brody's policies would be to allow the insurance company to insist on a formality that has no discernible substantial significance. Just as the insurer would not be allowed to withhold payment if the policies had been physically destroyed, so this Court sees no reason to allow the insurer to withhold payment when this Court's judgment will legally destroy any further obligation of the insurer.

Motion for summary judgment granted.