**UNITED STATES of America,**
**Plaintiff,**

v.

**Lomas E. BALL, Mrs. Hattie E. Ball, Mrs. Opal B. Cooley, Home Life Insurance Company, and Franklin Life Insurance Company, Defendants.**

**Civ. A. No. 1156.**

United States District Court
W. D. Virginia,
Roanoke Division.

Aug. 18, 1962.

---

Thomas B. Mason, U. S. Atty., Roanoke, Va., for the United States.

E. Ballard Baker, Wicker, Baker & Goddin, Richmond, Va., and Thomas C. Phillips, Jr., Roanoke, Va., for Franklin Life Ins. Co.

Woods, Rogers, Muse & Walker, Roanoke, Va., for Home Life Ins. Co.

Leroy Katz of Katz, Katz & Kantor, and M. Crockett Hughes, Jr., Bluefield, W. Va., for Hattie E. Ball and Opal B. Cooley.

DALTON, Chief Judge.

The United States of America, by this action, seeks to enforce income tax liens against the cash surrender values of certain life insurance policies issued by Home Life Insurance Company and Franklin Life Insurance Company on the life of Lomas E. Ball, with Hattie E. Ball (mother of Lomas E. Ball) as primary beneficiary, and Mrs. Opal B. Cooley (sister of Lomas E. Ball) as contingent beneficiary. Lomas E. Ball, a physician, allegedly is a fugitive from the Western District of Virginia, and at present resides in old Mexico. The insurance companies involved admit the existence of the insurance policies described in the complaint, but deny the right of the United States Government to the cash surrender values thereof, and further ask the Court for full and complete protection against all other claims or demands in the event the Court should determine that such cash surrender values of the insurance policies may be subjected to payment of the Government's claim in this action.

Mrs. Hattie E. Ball and Mrs. Opal B. Cooley deny that the Government has the right to subject the cash value of the insurance policies toward payment of the tax claim, and the beneficiaries assert their respective interests under said insurance policies, and ask that the relief prayed for by the Government be denied.

The facts as stipulated are:

1. Home Life Insurance Company, 256 Broadway, New York 8, New York, issued the following described insurance policies and guaranteed annuity contracts to Lomas E. Ball:

| Policy No. | Date Issued | Insured | Cash Surrender Value as of June 29, 1959 | Dividends on Deposit |
|---|---|---|---|---|
| 510,947 | July, 1943 | Lomas Elmo Ball | $756.00 | $68.79 |
| 511,299 | August, 1943 | Lomas Elmo Ball | $504.00 | $45.84 |

The beneficiary of said policies is Hattie E. Ball, mother of the insured, who resides at 512 Rogers Street, Bluefield, West Virginia. Lomas E. Ball retains the right to change the beneficiary; the policies are non-negotiable; and the Government's tax lien was served on George Gamache, Assistant Secretary of the Company, on April 23, 1957, at 2:40 P.M.

2. Franklin Life Insurance Company, home office, Springfield, Illinois, issued the following described guaranteed life annuity contracts to Lomas E. Ball:

| Policy No. | Date Issued | Insured | Cash Surrender Value as of June 29, 1959 |
| --- | --- | --- | --- |
| 643475 | 7–18–47 | Lomas Elmo Ball | $4,959.35 |
| 677696 | 11–13–47 | Lomas Elmo Ball | $4,878.05 |

The primary beneficiary of said policies is Hattie E. Ball, mother of the insured. The contingent beneficiary is Mrs. Opal B. Cooley, sister of the insured, who resides at Bluefield, Virginia. Lomas E. Ball retains the right to change the beneficiary; the policies are non-negotiable; and the Government's tax lien was served on John B. Vala, Assistant Vice President of the Company on April 23, 1957, at 2:17 P.M.

3. On March 27, 1957, a federal income tax assessment in the sum of $10,-381.13 was made against the income of Lomas E. Ball for the year 1954, a certified copy of which is filed in the record. The said exhibit shows the balance due for 1954 as $14,788.67 which includes a 50% penalty in the sum of $4,407.54 which is not being sought in this suit.

4. On April 1, 1957, notice and demand for said assessment were made by means of certified mail, addressed to Lomas E. Ball at Big Stone Gap, Virginia, his last known address, in accordance with Section 6303, Internal Revenue Code of 1954, 26 U.S.C.A. § 6303, a receipt for said piece of certified mail having been signed by Billie R. Thompson, who was the secretary of Lomas E. Ball and authorized to handle his mail. A certified copy of said notice and demand for said assessment is also filed.

5. Notice of tax lien was filed on April 1, 1957, at 11:00 A.M. with the Clerk of the Circuit Court of Wise County, Virginia, the same being docketed in Judgment Lien Docket 30, at page 130, a certified copy of which notice is filed.

6. Said tax assessment, with interest thereon, as allowed by law, remains due and owing to the United States of America.

7. Lomas E. Ball departed Big Stone Gap, Virginia, on February 5, 1957, and on February 27, 1957, he flew his private plane into Mexico on a permit for temporary sojourn.

8. Lomas E. Ball still continues to remain outside the continental limits of the United States and his last known address is Oaxaco, Oax, Corroco Areo, Mexico.

The Government takes the position that under the Internal Revenue laws, Code of 1954, Sections 6303, 6321, and 6322, 26 U.S.C.A. §§ 6303, 6321, 6322, it has complied with the requirements of notice and demand and that the Government's lien has been properly perfected to permit it to attach and subject the cash surrender values of the insurance policies to the Government's tax claim.

The statutes involved are:

"§ 6303. Notice and demand for tax

"(a) *General rule.*—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section

6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address."

"§ 6321. Lien for taxes

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

"§ 6322. Period of lien

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

As stated in the stipulation, Lomas E. Ball left the United States on February 5, 1957. The Government's tax assessment was made March 27, 1957.

The question for determination is whether a tax lien could arise in favor of the Government after Lomas E. Ball left the United States and while he is a fugitive in Mexico.

It is agreed that following the tax assessment, notice and demand was made for the taxes on April 1, 1957, by means of certified mail addressed to Ball at his last known address, and that the mail was receipted for by Ball's secretary, who was authorized to handle his mail. Further, a notice of the tax lien was on April 1, 1957, filed with the Clerk of the Circuit Court of Wise County, Virginia, in which county the town of Big Stone Gap is located.

The case of United States v. Metropolitan Life Insurance Company, 256 F. 2d 17 (C.A. 4th) (1958), is strikingly close to our problem. It decides almost everything we need to know here, namely, that the insured had a property interest in the insurance policies, and that such property interest may be subjected to the satisfaction of the lien, but the case does have one distinguishing characteristic in that it recites "notice of lien was filed with the Clerk of the County Court at Parkersburg, West Virginia, *before he absconded*". (Emphasis added.) However, as the Government points out, the Court did not state that the tax lien would not have arisen if the taxpayer had left the country before the assessment was made.

On this ground the beneficiaries urge that the relief prayed for by the Government be denied.

The Court does not accept this defense, because the factual situation is that there was substantial compliance by the Government with the requirements of the Internal Revenue Code relating to notice and demand and, further, the Court is of the opinion that the notice of lien and demand was effective although Lomas E. Ball had fled the United States to Mexico several days before the tax assessment and notice and demand thereon.

Under the facts and circumstances of this case, it is only reasonable to infer that Lomas E. Ball knew he was indebted to the Government for taxes and that he realized an assessment for the same would soon be made, and further, one is justified in believing that the notice and demand for tax "sent by mail to such person's last known address" was duly received by Ball through his secretary, who was authorized to handle his mail.

Although over five years have elapsed since the notice and demand for tax was filed, Dr. Ball has not denied or challenged the validity of the assessment. It would seem that the taxpayer is relying on the belief and hope that, having fled the country before the date of the assessment and notice, the Government cannot effectively reach the property

which he left behind. To thus permit a taxpayer to avoid payment of taxes justly due the country wherein the income was acquired would place the Government at a distinct disadvantage, and moreover, would be unfair to other taxpayers. The Government has no monies except those which it legally requires of the taxpayers to expend for defense and other governmental services; therefore, its right to collect all taxes fairly and properly due must be protected.

One cannot flee the country and leave the Government "holding the bag", looking helplessly at the fugitive's property located here.

Answering further the contention that the tax lien cannot arise by reason of Dr. Ball's departure from United States soil prior to the time of the assessment, it is pertinent to inquire how long must the Government wait or when can the Government reach the property and obtain relief? What would happen to the benefits arising from the insurance policies if Dr. Ball spent the remainder of his life in Mexico and never returned to the United States? Could it be reasonably contended that a taxpayer could pick up part of his wealth and go to another country for permanent residence, leaving behind great wealth and properties for his heirs or assignees? We think not. The old adage of being "just before generous" applies as well to tax obligations as well as to food, lodging or money borrowed.

Quite true this holding will in this instance deprive the taxpayer's mother or sister of ultimately receiving the benefits and protection which the taxpayer had envisioned and provided for them, and doubtless the beneficiaries are in need of such benefits. However, the hardship here subjected must be subordinated to the more important and basic principle of protecting our Government's right to assess and collect the taxes to which it is justly entitled.

The insurance companies involved stress their desire for full and complete protection from any claims in the future by the insured or the beneficiaries.

While the Court certainly would want the insurance companies thus protected, yet the Court is not aware of any way by which such a condition could be appropriately embraced in the judgment order.

An order will be entered granting the Government the relief prayed for in the complaint.